103 P.3d 773 (2004)
Gerard ADLER, Petitioner,
v.
FRED LIND MANOR, a corporation Mark Mullen, an individual and Jane Doe Mullen, and the marital community composed thereof, Respondents.
No. 74701-6.
Supreme Court of Washington, En Banc.
Argued June 8, 2004.
Decided December 23, 2004.
As Corrected January 7, 2005.
*777 Reba Weiss, Law Office of Reba Weiss, Marianne Meeker, Blair & Meeker LLP, Seattle, for Petitioner.
Jeffrey Paul Downer, Alan Michael Singer, Lee Smart Cook Martin & Patterson PS, Seattle, for Respondents.
Gregory Mann Miller, Seattle, Robin S. Conrad, Stephanie A. Martz, Nat'l Chamber Litigation Center, Charles Cooper, David H. Thompson, Elisebeth C. Cook, Cooper & Kirk, PLLC, Washington DC, for Amicus Curiae Chamber of Commerce of the United States.
Rex Darrell Berry, Berry & Block LLP, Sacramento, for Amicus Curiae Circuit City Stores Inc.
Stewart Andrew Estes, Keating Bucklin & McCormack, Michael Barr King, Ralph Crockett Pond, Sarah Elyse Haushild, Lane Powell Spears Lubersky LLP, Seattle, for Amicus Curiae Washington Defense Trial Lawyers.
Jeffrey Lowell Needle, Jesse Andrew Wing, MacDonald Hoague & Bayless, Seattle, for Amicus Curiae Washington Employment Lawyers Association.
Debra Leigh Williams Stephens, Bryan Patrick Harnetiaux, Spokane, for Amicus Curiae Washington State Trial Lawyers Association Foundation.
BRIDGE, J.
Like its companion case, Zuver v. Airtouch Communications, Inc., No. 74156-5, ___ Wash.2d ___, 103 P.3d 753, 2004 WL 3016484 (Wash. Dec. 23, 2004), this case requires us to consider the enforceability of a predispute employment arbitration agreement in the context of employment discrimination litigation. Here, after employee Gerald Adler sued his employer Fred Lind Manor, the trial court granted Fred Lind Manor's motion to compel arbitration under the arbitration agreement. Adler asserts that the arbitration agreement is unenforceable because it violates his right to a jury trial, because the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, entitles him to a judicial forum, and because the arbitration agreement is both procedurally and substantively unconscionable. He also claims that Fred Lind Manor waived its right to arbitration and/or should be equitably estopped from demanding arbitration. We agree with Adler that the agreement's attorney fees and 180- day limitations provisions unreasonably favor Fred Lind Manor and are thus substantively unconscionable. We further conclude that factual disputes preclude resolution of Adler's claims of procedural unconscionability, the substantive conscionability of the fee-splitting provision, and whether his right to a jury trial was violated. We therefore remand these claims to the trial court for further proceedings consistent with this opinion.

I

STATEMENT OF FACTS
Gerald Adler immigrated to the United States from Poland in 1990. On June 4, *778 1992, Fred Lind Manor, a business that provides housing and services to senior citizens, hired Adler for a maintenance personnel position. Two months later, Fred Lind Manor promoted Adler to maintenance and housekeeper supervisor.
In 1995, Paradigm Senior Living assumed management of Fred Lind Manor and required all current employees to sign an arbitration agreement as a condition of their continued employment. The arbitration agreement provided:

Arbitration Agreement
I hereby agree that any dispute related to my employment relationship shall be resolved exclusively through binding arbitration in Seattle, Washington under the American Arbitration Association's Commercial Arbitration Rules, except as other wise [sic] provided here.
I agree to the following terms of arbitration as part of this agreement to arbitration. The aggrieved party must deliver to the other party a written notice of his/her/its intention to seek arbitration no later than 180 days after the event that first gives rise to the dispute. Otherwise his/her/its rights shall be irrevocably waived. The dispute shall be decided by one arbitrator selected by mutual agreement of the parties, or absent agreement, in accordance with the Rules. The arbitrator's fee and other expenses of the arbitration process shall be shared equally. The parties shall bear their own respective costs and attorneys fees. Washington law, to the extent permitted, shall govern all substantive aspects of the dispute and all procedural issues not covered by the Rules.
Clerk's Papers (CP) at 22. Adler signed the agreement as did general manager, Christine Serold.
Adler received another promotion to maintenance and housekeeper director in May 1998. Then on January 16, 2001, general manager Mark Mullen ordered him to move a commercial dryer, and while moving the dryer, Adler hurt his hip and back. On January 17, 2001, Adler visited his doctor who diagnosed him with hip osteoarthritis and advised him to perform "light duty." Id. at 5. On that same day, Adler filed his first claim with the Department of Labor and Industries (DLI).[1] He sustained additional injuries on June 1, 2001, and January 14, 2002, and filed claims with DLI for these injuries.[2] On June 11, 2002, Mullen fired Adler for "`inability to operate all aspects of [the] maintenance department.'" CP at 6. Fred Lind Manor replaced Adler with a younger employee.
On October 2, 2002, Adler filed a complaint with the Equal Employment Opportunity Commission (EEOC) alleging that Fred Lind Manor and Mullen violated the Americans with Disabilities Act, 42 U.S.C. § 12101, the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 623, and Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e. In December 2002, Fred Lind Manor responded asserting that it had discharged Adler because of poor attendance, failure to meet productivity standards, Adler's sexual harassment of another employee, unauthorized use of Fred Lind Manor's facilities, and failure to respect residents' rights. Fred Lind Manor did not mention the existence of the arbitration agreement.
On January 9, 2003, the parties attended EEOC mediation. Neither party made reference to the arbitration agreement. Approximately four months after mediation, the EEOC dismissed Adler's complaint stating that "the EEOC is unable to conclude that the information obtained establishes violations of the statutes." Fred Lind Manor's Answer to Mot. for Discretionary Review, Ex. 8.
On May 20, 2003, Adler filed a complaint in superior court alleging that Fred Lind Manor violated the WLAD by discriminating against him for his disability, age, and national origin; discharged him for pursuing *779 worker's benefits in violation of Title 51 RCW; committed the tort of wrongful discharge in violation of public policy; committed the tort of intentional infliction of emotional distress; and created a hostile work environment. Fred Lind Manor filed its answer on August 1, 2003, claiming for the first time that Adler must submit his claims to arbitration. Fourteen days later, Fred Lind Manor moved to compel arbitration and stay proceedings. During a telephone conversation with Adler's attorney, Fred Lind Manor indicated that at arbitration, it planned to seek dismissal of Adler's claims pursuant to the 180-day statute of limitations provision of the arbitration agreement.
In response to Fred Lind Manor's motion to compel arbitration, Adler claimed he did not understand that the 1995 agreement required him to arbitrate his future claims nor was he given a copy of the agreement.[3] He requested that the court declare the agreement void as unconscionable or alternatively, find that Fred Lind Manor had waived arbitration. Without holding a hearing, the trial court granted Fred Lind Manor's motion to compel arbitration and stay proceedings.
Pursuant to RAP 2.3(b)(2), Adler filed a motion for discretionary review to this court asserting that (1) the trial court's order granting Fred Lind Manor's motion to compel arbitration violated his right to a jury trial under article I, section 21 of the state constitution; (2) the WLAD mandates a judicial forum; (3) the arbitration agreement is both procedurally and substantively unconscionable and/or its provisions violate public policy; (4) Fred Lind Manor waived its right to arbitration by failing to raise it as a defense in a timely manner; and (5) Fred Lind Manor should be equitably estopped from compelling arbitration. He also requested attorney fees and costs under RAP 18.1(a), RAP 14.2, and RCW 49.60.030(2). We granted review.

II

ANALYSIS
The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, applies to all employment contracts except for employment contracts of certain transportation workers. Circuit City Stores, Inc., v. Adams, 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). Section 2 of the FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (emphasis added.) The United States Supreme Court has stated that "[s]ection 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary."[4]Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (citing Prima Paint Corp. v. Flood & Conklin Mfg. Corp., 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967)). "The effect of the section is to create a body of federal substantive law of arbitrability applicable to any arbitration agreement within the coverage of the Act." Id. Both state and federal courts must enforce this body of substantive arbitrability law. Perry v. Thomas, 482 U.S. 483, 489, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987) (citing Southland Corp. v. Keating, 465 U.S. 1, 11-12, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984)); see also Garmo v. Dean, Witter, Reynolds, Inc., 101 Wash.2d 585, 590, 681 P.2d 253 (1984). Courts must indulge every presumption "in favor of arbitration, whether *780 the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Moses H. Cone Mem'l Hosp., 460 U.S. at 25, 103 S.Ct. 927.
Although federal and state courts presume arbitrability, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2." Doctor's Assocs., Inc., v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); see also Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 281, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). However, courts may not refuse to enforce arbitration agreements under state laws which apply only to such agreements, Doctor's Associates, 517 U.S. at 687, 116 S.Ct. 1652 (citing Allied-Bruce, 513 U.S. at 281, 115 S.Ct. 834); see also Southland, 465 U.S. at 16, 104 S.Ct. 852; Garmo, 101 Wash.2d at 590, 681 P.2d 253, or by "rely[ing] on the uniqueness of an agreement to arbitrate." Perry, 482 U.S. at 493 n. 9, 107 S.Ct. 2520 (emphasis added).
We engage in de novo review of a trial court's decision to grant a motion to compel or deny arbitration. Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 936 (9th Cir.2001), cert. denied, 534 U.S. 1133, 122 S.Ct. 1075, 151 L.Ed.2d 977 (2002); Stein v. Geonerco, Inc., 105 Wash.App. 41, 45, 17 P.3d 1266 (2001); Tjart v. Smith Barney, Inc., 107 Wash.App. 885, 893, 28 P.3d 823 (2001), review denied, 145 Wash.2d 1027, 42 P.3d 974, cert. denied, 537 U.S. 954, 123 S.Ct. 424, 154 L.Ed.2d 303 (2002). The party opposing arbitration bears the burden of showing that the agreement is not enforceable. See Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

WLAD Requirements
Relying on cases holding that an exclusive remedies provision in a collective bargaining agreement does not prevent employees from initiating civil suits in court for violations of the WLAD, Adler argues that the WLAD requires a judicial forum for discrimination claims of employees. See Reese v. Sears, Roebuck & Co., 107 Wash.2d 563, 577, 731 P.2d 497 (1987) (holding that chapter 49.60 RCW permits individual employees to pursue their rights under the WLAD in court without first exhausting remedies in a collective bargaining agreement), overruled on other grounds by, Phillips v. City of Seattle, 111 Wash.2d 903, 766 P.2d 1099 (1989); Bruce v. N.W. Metal Prods. Co., 79 Wash.App. 505, 513, 903 P.2d 506 (1995) ("Under Washington law, a disability discrimination claim arises out of statute, the WLAD, and is not preempted by any contractual or CBA [collective bargaining agreement] requirements or remedies."); Ervin v. Columbia Distrib., Inc., 84 Wash.App. 882, 891, 930 P.2d 947 (1997) (holding that section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, does not preempt claims brought under Washington's Minimum Wage Act, chapter 49.46 RCW). The United States Supreme Court, however, has held that in instances where a valid individual employee-employer arbitration agreement exists, the FAA requires that employees arbitrate federal and state law discrimination claims.[5]See Gilmer v. Interstate/Johnson *781 Lane Corp., 500 U.S. 20, 27-28, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (holding that the FAA requires arbitration of age discrimination claims when a valid arbitration agreement exists); Perry, 482 U.S. at 491, 107 S.Ct. 2520 (FAA preempts state minimum wage law requiring a judicial forum for vindication of wage claims). Moreover, the FAA clearly preempts any state law to the contrary. Id.; Southland, 465 U.S. at 16, 104 S.Ct. 852; Garmo, 101 Wash.2d at 590, 681 P.2d 253. Thus, we reject Adler's claim that the WLAD entitles him to a judicial forum.[6]

Unconscionability
It is black letter law of contracts that the parties to a contract shall be bound by its terms. See Nat'l Bank of Wash. v. Equity Investors, L.P., 81 Wash.2d 886, 912-13, 506 P.2d 20 (1973). Adler argues that he should be exempt from the terms of the agreement here because it is both procedurally and substantively unconscionable. "The existence of an unconscionable bargain is a question of law for the courts." Nelson v. McGoldrick, 127 Wash.2d 124, 131, 896 P.2d 1258 (1995) (citing Mieske v. Bartell Drug Co., 92 Wash.2d 40, 50, 593 P.2d 1308 (1979)). In Washington, we have recognized two categories of unconscionability, substantive and procedural. Id. (citing Schroeder v. Fageol Motors, Inc., 86 Wash.2d 256, 260, 544 P.2d 20 (1975)). "Substantive unconscionability involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh...." Schroeder, 86 Wash.2d at 260, 544 P.2d 20. "`Shocking to the conscience', `monstrously harsh', and `exceedingly calloused' are terms sometimes used to define substantive unconscionability." Nelson, 127 Wash.2d at 131, 896 P.2d 1258 (quoting Montgomery Ward & Co. v. Annuity Bd. of S. Baptist Convention, 16 Wash.App. 439, 444, 556 P.2d 552 (1976)). Procedural unconscionability is "the lack of a meaningful choice, considering all the circumstances surrounding the transaction including `"[t]he manner in which the contract was entered," whether the party had "a reasonable opportunity to understand the terms of the contract," and whether "the important terms [were] hidden in a maze of fine print."'" Id. at 131, 896 P.2d 1258 (alternations in original) (quoting Schroeder, 86 Wash.2d at 260, 544 P.2d 20 (quoting Williams v. Walker-Thomas Furniture Co., 350 F.2d 445, 449 (D.C.Cir.1965))). We have cautioned that "these three factors [should] not be applied mechanically without regard to whether in truth a meaningful choice existed." Id.
We have not explicitly addressed whether a party challenging a contract must show both substantive and procedural unconscionability. However, our decisions in Nelson, 127 Wash.2d at 131, 896 P.2d 1258, and Schroeder, 86 Wash.2d at 260, 544 P.2d 20, analyze procedural and substantive unconscionability separately without suggesting that courts must find both to render a contract void. See also M.A. Mortenson Co. v. Timberline Software Corp., 140 Wash.2d 568, 588, 998 P.2d 305 (2000). A federal district court applying Washington law and the Court of Appeals have interpreted these decisions to mean that a party challenging a contract may allege either substantive or procedural unconscionability. Luna v. Household Fin. Corp., 236 F.Supp.2d 1166, 1174 (W.D.Wash.2002) (noting that "under *782 Washington law a contract may be invalidated on procedural unconscionability or substantive unconscionability grounds"); Tjart, 107 Wash.App. at 898, 28 P.3d 823 (party seeking to avoid enforcement of an arbitration agreement on ground of procedural unconscionability alone).
Fred Lind Manor and amicus, Association of Washington Business (AWB), urge us to require proof of both substantive and procedural unconscionability to render a contract void as unconscionable. The AWB asserts that a majority of courts adopt this approach since,
[i]f, despite grossly unequal bargaining power between the parties or other evidence of lack of meaningful choice, the terms of the contract are nonetheless fair, the weaker party has suffered no injury. Likewise, courts should not interfere with the terms of a contract, however "harsh" or one-sided, where the parties were of equal bargaining power or where there was no unfairness in the manner in which the contract was executed.
Amicus Curiae Br. of AWB at 11. See also 8 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 18:10, at 67 (Richard A. Lord, 4th ed. 1998) ("[S]urprise or an inability to bargain with understanding as to the terms of an agreement (procedural unfairness) must culminate in the drafting party's exacting harsh or unreasonable terms from the other party (substantive unfairness) before the concept of unconscionability becomes applicable in the view of perhaps most jurisdictions.").
In Maxwell v. Fidelity Financial Services, Inc., 184 Ariz. 82, 90, 907 P.2d 51 (1995), the Arizona Supreme Court considered an almost identical argument. There the court held that "a claim of unconscionability can be established with a showing of substantive unconscionability alone, especially in cases involving either price-cost disparity or limitation of remedies." Id. The court, however, reserved the question whether procedural unconscionability alone could render a contract void as unconscionable. Id.
We agree with the Arizona Supreme Court. In some instances, individual contractual provisions may be so one-sided and harsh as to render them substantively unconscionable despite the fact that the circumstances surrounding the parties' agreement to the contract do not support a finding of procedural unconscionability. See 2 Restatement (Second) of Contracts § 208 cmt. e. (1981) ("Particular terms may be unconscionable whether or not the contract as a whole is unconscionable."). Accordingly, we now hold that substantive unconscionability alone can support a finding of unconscionability. However, since Adler has yet to prove a valid claim of procedural unconscionability, we decline to consider whether it alone will support a claim of unconscionability.

Procedural Unconscionability
As noted, to determine whether Adler's and Fred Lind Manor's arbitration agreement is procedurally unconscionable, we look to the circumstances surrounding their transaction to determine whether Adler lacked meaningful choice: "`[t]he manner in which the contract was entered,' whether [Adler] had `a reasonable opportunity to understand the terms of the contract,' and whether `the important terms [were] hidden in a maze of fine print.'" Schroeder, 86 Wash.2d at 260, 544 P.2d 20 (second alteration in original) (quoting Williams, 350 F.2d at 449).
First, Adler asserts that the arbitration agreement is an adhesion contract, which he argues, supports his claim of unconscionability.[7] We have established the following factors to determine whether an adhesion contract exists: "(1) whether the contract is a standard form printed contract, (2) whether it was `prepared by one party and submitted to the other on a "take it or leave it" basis', and (3) whether there was `no *783 true equality of bargaining power' between the parties." Yakima County (W.Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wash.2d 371, 393, 858 P.2d 245 (1993) (quoting Standard Oil Co. of Cal. v. Perkins, 347 F.2d 379, 383 n. 5 (9th Cir.1965)). In Yakima County Fire Protection District, we noted that "to the extent that the characterization of a contract as an adhesion contract has any relevance to determine the validity of a contract, it is only in looking for procedural unconscionability." 122 Wash.2d at 393, 858 P.2d 245. However, the fact that an agreement is an adhesion contract does not necessarily render it procedurally unconscionable. See Yakima County Fire Prot. Dist., 122 Wash.2d at 393, 858 P.2d 245. See also Mendez v. Palm Harbor Homes, Inc., 111 Wash.App. 446, 459-60, 45 P.3d 594 (2002); Luna, 236 F.Supp.2d at 1175; Walters v. A.A.A. Waterproofing, Inc., 120 Wash.App. 354, 362, 85 P.3d 389 (2004).
Fred Lind Manor's and Adler's agreement is an adhesion contract. Paradigm provided a standard form printed arbitration agreement to all of Fred Lind Manor's employees. See CP at 39. Fred Lind Manor's representative, Serold, informed employees that they must sign the agreement as a condition of their continued employment, i.e., on a "take it or leave it basis."[8]Id. Presumably, employees were not free to negotiate the terms of the agreement with Fred Lind Manor. Thus, there was "`no true equality of bargaining power.'" Yakima County Fire Prot. Dist., 122 Wash.2d at 393, 858 P.2d 245 (quoting Standard Oil, 347 F.2d at 383 n. 5). Nonetheless, the fact that Fred Lind Manor's and Adler's arbitration agreement is an adhesion contract does not end our inquiry. Id.
Adler further asserts that the agreement is procedurally unconscionable because his unequal bargaining power precluded him from negotiating terms of the agreement. See Br. of Pet'r at 30-31 (citing Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1171 (9th Cir.2003), cert. denied, 540 U.S. 1160, 124 S.Ct. 1169, 157 L.Ed.2d 1204 (2004)). However, we have held that while unequal bargaining power may exist between parties, the mere existence of unequal bargaining power will not, standing alone, justify a finding of procedural unconscionability. See Yakima County Fire Prot. Dist., 122 Wash.2d at 392-93, 858 P.2d 245. See also Tjart, 107 Wash.App. at 898-99, 28 P.3d 823; Pub. Employees Mut. Ins. Co. v. Hertz Corp., 59 Wash.App. 641, 650, 800 P.2d 831 (1990), review denied, 116 Wash.2d 1013, 807 P.2d 884 (1991); Mendez, 111 Wash.App. at 459, 45 P.3d 594. Rather, the key inquiry for finding procedural unconscionability is whether Adler lacked meaningful choice. Schroeder, 86 Wash.2d at 260, 544 P.2d 20.
Adler contends he lacked meaningful choice because the manner in which he entered the contract shows that he was forced to sign the agreement under threat that Fred Lind Manor would fire him, and that his financial circumstances, namely his new daughter and new house, placed pressure on him to sign the agreement. See CP at 84-85. He further avers that he "had no idea what an arbitration was or what it meant." Id. at 84. Fred Lind Manor, however, disputes Adler's version of the facts asserting that it had no knowledge of Adler's financial circumstances; that it never threatened to fire him if he refused to sign the agreement; that Serold explained that "arbitration was an alternative to going into a lawsuit in court," CP at 40; and that Adler "`did not indicate any reservations or reluctance in signing the document, and prior to signing, he read it, seemed to understand it, and absolutely signed it of his own free will.'" Resp'ts' Br. at 35 (quoting CP at 305).
Adler also contends that he did not have a reasonable opportunity to understand the arbitration agreement since his limited English impaired his ability to fully comprehend its provisions. On the other hand, Fred Lind Manor claims that Serold explained the terms of the agreement and that Adler appeared to understand its terms. Perhaps most importantly, Adler admits that he pondered the arbitration agreement for a week *784 and presumably, had ample opportunity to contact counsel and inquire about the meaning of its terms. See CP at 85. We conclude therefore that the evidence here weighs against Adler's claim that he did not have a reasonable opportunity to understand the terms of the agreement.
Further, the important terms were not hidden in a "maze of fine print." See CP at 22. First, this short half page agreement is clearly labeled "Arbitration Agreement" in boldface type and normal font. Id. The first sentence explicitly states, "I hereby agree that any dispute related to my employment relationship shall be resolved exclusively through binding arbitration." Id. Thus, this circumstance of Adler's and Fred Lind Manor's transaction does not support Adler's claim of procedural unconscionability.
Nevertheless, we have cautioned that these factors should "not be applied mechanically without regard to whether in truth a meaningful choice existed." Nelson, 127 Wash.2d at 131, 896 P.2d 1258. Although Fred Lind Manor appears to have provided Adler with a reasonable opportunity to understand the terms of the agreement, and the important terms were not hidden, Adler and Fred Lind Manor offer remarkably different versions of the facts pertaining to the manner in which the contract was entered into. Cf. Luna, 236 F.Supp.2d at 1177 (holding that the plaintiff had failed to establish procedural unconscionability since he had a reasonable opportunity to consider the agreement and the arbitration clause was clearly set forth in the contract). Consequently, we cannot make a determination of procedural unconscionability without further factual findings.
When disputes exist as to the circumstances surrounding an agreement, we remand to the trial court to make additional findings. See Nelson, 127 Wash.2d at 136, 896 P.2d 1258. If Fred Lind Manor's representative threatened to fire him for refusing to sign the agreement despite the fact that Adler raised concerns with its terms or indicated a lack of understanding, the manner of the transaction would lend support to Adler's claim of procedural unconscionability.[9]See id. (noting that undue pressure placed on a party at the time she entered into the agreement may lend support to a claim of unconscionability). However, if as Fred Lind Manor contends, Serold explained the document and/or offered to answer Adler's concerns or questions, such facts will not lend support to Adler's claim of procedural unconscionability. Montgomery Ward & Co., 16 Wash.App. at 445, 556 P.2d 552 (noting that lack of evidence of "deceptive sale practices, fraud, misrepresentation, undue influence, duress, high-pressure tactics, overreaching, [or] fine print," will not support a claim of unconscionability). Accordingly, we remand Adler's case to the trial court for further proceedings consistent with this opinion.

Substantive Unconscionability
Adler contends that the agreement's unilateral application renders it substantively unconscionable. He further argues that the arbitration agreement's fee-splitting, attorney fees, and limitations provisions are substantively unconscionable. Fred Lind Manor disputes Adler's claims countering that he improperly relies on California and Ninth Circuit law.

Unilateral Application
Relying on Ingle, 328 F.3d at 1174, Adler argues that the arbitration agreement is substantively unconscionable because it applies only to disputes brought by employees, not to disputes brought by Fred Lind Manor against its employees. Fred Lind Manor, however, claims that the agreement is bilateral since it also requires Fred Lind Manor to arbitrate any of its disputes brought against its employees.
To interpret the meaning of a contract's terms, Washington courts employ the context rule. Berg v. Hudesman, 115 Wash.2d 657, 667, 801 P.2d 222 (1990). The context rule requires that we determine the intent of the parties by viewing the contract *785 as a whole, which includes the subject matter and intent of the contract, examination of the circumstances surrounding its formation, subsequent acts and conduct of the parties, the reasonableness of the respective interpretations advanced by the parties, and statements made by the parties during preliminary negotiations, trade usage, and/or course of dealing. 25 DAVID K. DEWOLF & KELLER W. ALLEN, WASHINGTON PRACTICE, Contract Law and Practice § 5.5 (1998).
The text of the agreement here, as well as the parties' statements and conduct, support Fred Lind Manor's claim that the agreement also requires it to arbitrate its disputes against employees. First, at the time the arbitration agreements were executed, then-manager Serold informed employees that the arbitration agreement reflected management's policy that all employment disputes, "whether by employer or an employee," be subject to binding arbitration instead of a lawsuit in court. CP at 39-40. Serold also indisputably acted in her role as Fred Lind Manor's representative when she signed Adler's and other employees' agreements on Fred Lind Manor's behalf.[10]Id. Most importantly, the agreement provides, "[t]he aggrieved party must deliver to the other party a written notice of his/her/its intention to seek arbitration.... Otherwise his/her/its rights shall be irrevocably waived." CP at 22 (emphasis added). This provision does not single out individual employees' disputes against Fred Lind Manor. Rather, it refers generically to the "aggrieved party," and, by use of the words "his/her/its," clearly contemplates suits brought by Fred Lind Manor against its employees. CP at 22. Thus, we reject Adler's argument that this arbitration agreement applies unilaterally.

Fee-Splitting Provision
Next, Adler argues that the agreement's fee splitting provision is substantively unconscionable because the cost of arbitration would effectively bar him from bringing his claims.[11] Conversely, Fred Lind Manor argues that pursuant to the United States Supreme Court's decision in Green Tree Financial Corp., 531 U.S. at 91-92, 121 S.Ct. 513, Adler has failed to meet his burden to produce evidence showing that the fee-splitting provision makes arbitration prohibitively expensive.
As noted in Zuver, the United States Supreme Court has acknowledged that arbitration fees may prohibit employees from bringing their discrimination claims but held that "where... a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp., 531 U.S. at 92, 121 S.Ct. 513. In Zuver we further held that in order for a party opposing arbitration to meet his burden of showing the likelihood of incurring excessive costs, the Court of Appeals decision in Mendez, 111 Wash.App. 446, 45 P.3d 594, sets forth the proper approach. There the court held that by producing an affidavit describing his personal finances as well as fee information obtained from the American Arbitration Association's Seattle office, the party opposing arbitration, Mendez, had provided sufficient evidence to prove that the fee-splitting provision in his arbitration agreement was substantively unconscionable. Id. at 467-68, 45 P.3d 594. Unlike Mendez, Adler has failed to provide any specific information about the arbitration fees he will be required to share and why such fees would effectively prohibit him from bringing his claims. Consequently, he has not met his burden here to show that the agreement's fee-splitting provision is substantively unconscionable.
*786 Although Adler has failed to meet his burden, we hesitate to reach a final decision about the substantive conscionability of the agreement's fee-splitting provision. In similar circumstances, the Third Circuit Court of Appeals has remanded the case to the trial court and permitted limited discovery on the issue of whether such fees would effectively prohibit arbitration. Blair v. Scott Specialty Gases, 283 F.3d 595, 610 (3d Cir.2002); Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 268 (3d Cir.2003). Like the Third Circuit, we believe that Adler should have the opportunity to prove that the costs of arbitration would prohibit him from vindicating his claims. Therefore, on remand the trial court should provide the parties with the opportunity to engage in limited discovery regarding the costs of arbitration. On remand, "[o]nce prohibitive costs are established, the opposing party [Fred Lind Manor] must present contrary offsetting evidence to enforce arbitration." Mendez, 111 Wash.App. at 470, 45 P.3d 594. Such evidence may include an offer to pay all or part of the arbitration fees and costs. See Zuver.

Attorney Fees Provision
The arbitration agreement provides that "[t]he parties shall bear their own respective costs and attorneys fees." CP at 22. Adler contends that this provision is substantively unconscionable because it is one-sided and overly harsh requiring him to waive the right to recover his attorney fees and costs under RCW 49.60.030(2).[12] Fred Lind Manor, on the other hand, asserts that this provision,
provides only that the employer need not pay plaintiff's fees and costs leading up to and during the hearing; it does not hamper a prevailing claimant's right to attorney fees under the WLAD after ultimately prevailing. Both the Agreement and the rules provide that Washington law, including the WLAD, governs.
Resp'ts' Br. at 39.
We do not find Fred Lind Manor's interpretation of this provision persuasive. It is a well-known principle of contract interpretation that "specific terms and exact terms are given greater weight than general language." 2 Restatement (Second) of Contracts § 203(c) (1981). While the agreement generally provides that "Washington law, to the extent permitted, shall govern all substantive aspects of the dispute and all procedural issues not covered by the Rules," the agreement's attorney fees provision specifically and unambiguously states that the "parties shall bear their own respective costs and attorneys fees." CP at 22 (emphasis added). Moreover, any ambiguity between these arguably conflicting provisions is resolved against the drafter, Fred Lind Manor. See 25 DeWolf & Allen, supra, § 5.4. Consequently, this provision effectively undermines a plaintiff's rights to attorney fees under RCW 49.60.030(2) and "helps ... the party with a substantially stronger bargaining position and more resources, to the disadvantage of an employee needing to obtain legal assistance." Alexander, 341 F.3d at 267. See also Brooks v. Travelers Ins. Co., 297 F.3d 167, 171 (2d Cir.2002) (noting that an arbitration agreement which restricts recovery of attorney fees would prevent plaintiffs from vindicating their statutory rights under Title VII). Thus, we hold that the attorney fees provision of the agreement is substantively unconscionable.

Limitation on Actions
Adler also argues the arbitration agreement's 180-day statute of limitations is substantively unconscionable because it provides for a substantially shorter limitations period than he is entitled to under the WLAD. Chapter 49.60 RCW, however, does not expressly provide for a particular statute of limitations for employment discrimination claims. Instead, courts have applied the general three-year statute of limitations in RCW 4.16.080(2) to WLAD claims reasoning that violations of chapter 49.60 RCW amount to an invasion of a person's legal rights. Nearing v. Golden State Foods Corp., 114 Wash.2d 817, 820, 792 P.2d 500 (1990); Lewis v. Lockheed Shipbuilding & Constr. Co., 36 Wash.App. 607, 613, 676 P.2d 545 (1984).
*787 Fred Lind Manor argues that in Washington, "`[l]imitation of actions provisions in a contract prevail over general statutes of limitations unless prohibited by statute or public policy, or unless they are unreasonable.'" Resp'ts' Br. at 43 (quoting Ashburn v. Safeco Ins. Co. of Am., 42 Wash.App. 692, 696, 713 P.2d 742, review denied, 105 Wash.2d 1016 (1986)). Fred Lind Manor is correct.
As noted, Washington courts have established that a contract's limitations provision will "prevail over general statutes of limitations unless prohibited by statute or public policy, or unless they are unreasonable." Ashburn, 42 Wash.App. at 696, 713 P.2d 742; State Ins. Co. v. Meesman, 2 Wash. 459, 463, 27 P. 77 (1891); 51 Am.Jur.2d Limitation of Actions § 95 (2000). No statute explicitly prohibits Fred Lind Manor and Adler from adopting a shorter limitation provision for WLAD claims in their contract.
Numerous courts have considered whether limitations provisions in arbitration agreements and/or adhesion contracts are substantively unconscionable. Some have held that six-month limitations provisions for Title VII claims are reasonable, but that shorter limitations periods, i.e., 30 days, are substantively unconscionable. Soltani v. W. & S. Life Ins. Co., 258 F.3d 1038, 1044 (9th Cir.2001) (upholding a six-month limitations provision in an employment contract); Taylor v. W. & S. Life Ins. Co., 966 F.2d 1188, 1206 (7th Cir.1992) (upholding a six-month limitation period). Cf. Alexander, 341 F.3d at 267 (holding that a 30-day limitations provision is substantively unconscionable); Plaskett v. Bechtel Int'l, Inc., 243 F.Supp.2d 334, 341 (D.Vi.2003) (holding that a 30-day limitations provision is substantively unconscionable). The Ninth Circuit has held that even one-year limitations provisions are substantively unconscionable because they deprive plaintiffs the benefit of the continuing violation and tolling doctrines under federal and state discrimination laws. Ingle, 328 F.3d at 1175; Circuit City Stores, Inc. v. Adams, 279 F.3d 889, 894-95 (9th Cir.), cert. denied, 535 U.S. 1112, 122 S.Ct. 2329, 153 L.Ed.2d 160 (2002).
We agree with the Ninth Circuit. By limiting the period of time in which its employees may bring discrimination claims, Fred Lind Manor obtains unfair advantages. First, in order to timely pursue his claim against Fred Lind Manor at arbitration, an employee may be forced to forgo the opportunity to file his complaint and have that complaint investigated and mediated by the EEOC or Washington Human Rights Commission (WHRC). See RCW 49.60.230(2) (complaint filed with the WHRC under the WLAD "must be so filed within six months after the alleged act of discrimination"); 42 U.S.C. § 2000e-5(e)(1) (under Title VII, plaintiff must file an employment discrimination charge with the EEOC either 180 or 300 days after an "alleged unlawful employment practice occurred"). Moreover, because the agreement demands that an employee "deliver to the other party a written notice of his/her/its intention to seek arbitration no later than 180 days after the event that first gives rise to the dispute," that employee could be barred from seeking those damages for a hostile work environment arising out of discriminatory behavior which occurred outside the limitations period. CP at 22 (emphasis added). See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (holding that a plaintiff alleging a hostile work environment claim under Title VII may seek damages for all behavior contributing to a hostile work environment claim, including behavior allegedly occurring outside the limitations period, "[p]rovided that an act contributing to the claim occurs within the filing period").[13] The agreement's language requiring written notice within 180 days of "the event that first gives rise to the dispute," could be interpreted to insulate the employer from potential liability for violative behavior occurring outside the limitations period by establishing a liability cut-off if notice of the first violative *788 behavior is not given within 180 days. CP at 22 (emphasis added). Therefore, we hold that the 180-day limitations provision in the agreement unreasonably favors Fred Lind Manor and thus, is substantively unconscionable.

Severance of the Substantively Unconscionable Provisions
Fred Lind Manor urges us to sever any provisions we find to be substantively unconscionable arguing that the essential term of the parties' bargain, i.e., arbitration, should be retained. Adler, however, contends that because the substantively unconscionable provisions pervade the entire agreement, we should refuse to sever those provisions and declare the entire agreement void. See Ingle, 328 F.3d at 1180 (holding that the employer's "insidious pattern" of seeking to tip the scales in its favor during employment disputes justified a decision to declare the entire agreement unenforceable). The 2 Restatement (Second) of Contracts § 208 (1981) provides that:
If a contract or term thereof is unconscionable at the time the contract is made a court may refuse to enforce the contract, or may enforce the remainder of the contract without the unconscionable term, or may so limit the application of any unconscionable term as to avoid any unconscionable result.
(Emphasis added.) For contracts concerning leases, sales, real property, and retail installments, our legislature has adopted the Restatement position directing that in cases where these contracts are found to contain an unconscionable provision, courts may "enforce the remainder of the ... contract without the unconscionable clause." RCW 62A.2A-108(1); RCW 62A.2-302; RCW 64.34.080; RCW 63.14.136.
The Restatement position concerning severance of unconscionable provisions should also apply in cases where courts are confronted with substantively unconscionable provisions in employment arbitration agreements.[14]Accord Helstrom v. N. Slope Borough, 797 P.2d 1192, 1200 (Alaska 1990); Faber v. Menard, Inc., 367 F.3d 1048, 1054 (8th Cir.2004); Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 682-83 (8th Cir.2001); Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 221-22 (3d Cir.2003); Parilla v. IAP Worldwide Servs. V.I., Inc., 368 F.3d 269, 288 (3d Cir.2004). Application of this rule facilitates the accomplishment of important federal and state public policies favoring arbitration of disputes. See Gannon, 262 F.3d at 682 (noting that if courts declared an entire arbitration agreement invalid even if the agreement contained only one invalid provision, such a result would discourage parties from arbitrating their disputes).
Nonetheless, we acknowledge that in instances where an employer engages in an "insidious pattern" of seeking to tip the scales in its favor in employment disputes by inserting numerous unconscionable provisions in an arbitration agreement, courts may decline to sever the unconscionable provisions. Ingle, 328 F.3d at 1180. In this case, however, Adler's and Fred Lind Manor's arbitration agreement contains just two substantively unconscionable provisions. The primary thrust of their agreement is the agreement to arbitrate. Consequently, we can sever the unconscionable attorney fees and limitations provisions, without disturbing the primary intent of the parties to arbitrate *789 their disputes.[15]See Spinetti, 324 F.3d at 222-23.

Jury Trial Rights
Adler argues that compelling him to arbitrate his disputes violates his jury trial rights under article I, section 21 of the Washington Constitution because he did not "knowing[ly], voluntar[ily], and intelligent[ly]" waive his right to a jury trial.[16] Br. of Pet'r at 13. He principally relies on our decision in Godfrey v. Hartford Casualty Insurance Co., where we stated that when parties enter into arbitration agreements, jury trial waivers "`must be voluntary, knowing, and intelligent.'" 142 Wash.2d 885, 898, 16 P.3d 617 (2001) (quoting City of Bellevue v. Acrey, 103 Wash.2d 203, 207, 691 P.2d 957 (1984)). There the party opposing arbitration, Hartford Insurance, argued that it had not knowingly, voluntarily, and intelligently waived its right to a jury trial. Godfrey, 142 Wash.2d at 898, 16 P.3d 617. We rejected Hartford Insurance's argument reasoning that "[b]y agreeing in the insurance policy it drafted to arbitrate its dispute with the Godfreys, Hartford voluntarily submitted itself to the jurisdiction of [the state arbitration act], and it waived the right to a trial by jury." Id.
Despite Adler's arguments to the contrary, our decision in Godfrey does not support his assertion that his jury trial rights were violated when he signed an agreement to arbitrate disputes with his employer. The crux of our decision in Godfrey, 142 Wash.2d at 898, 16 P.3d 617, was that by knowingly and voluntarily agreeing to arbitration, a party implicitly waives his right to a jury trial by agreeing to an alternate forum, arbitration. See also Nat'l Bank of Wash. v. Equity Investors, 81 Wash.2d 886, 912, 506 P.2d 20 (1973) ("One cannot, in the absence of fraud, deceit or coercion be heard to repudiate his own signature voluntarily and knowingly fixed to an instrument whose contents he was in law bound to understand."). In Malted Mousse, Inc. v. Steinmetz, we affirmed this conclusion noting that by agreeing to arbitration, parties "generally waive their right to a jury." 150 Wash.2d 518, 526, 79 P.3d 1154 (2003). Accord Cooper v. MRM Inv. Co., 367 F.3d 493, 506 (6th Cir.2004) (holding that by agreeing to an arbitral forum, an employee necessarily waives his right to a jury trial); Burden v. Check Into Cash of Ky., LLC, 267 F.3d 483, 492 (6th Cir.2001) ("As to the failure of the arbitration clause to include a jury waiver provision, `the "loss of the right to a jury trial is a necessary and fairly obvious consequence of an agreement to arbitrate."'" (quoting Sydnor v. Conseco Fin. Servicing Corp., 252 F.3d 302, 307 (4th Cir.2001) (quoting Pierson v. Dean, Witter, Reynolds, Inc., 742 F.2d 334, 339 (7th Cir.1984)))); Bank One, N.A. v. Coates, 125 F.Supp.2d 819, 834 (S.D.Miss.2001) (by agreeing to arbitration, the parties implicitly waive their right to a jury trial), aff'd, 34 Fed. Appx. 964 (5th Cir.2002).
Nonetheless, as discussed supra, disputes still remain about the manner in which Adler entered into the arbitration agreement with Fred Lind Manor. Consequently, we decline to hold here that Adler knowingly and voluntarily entered into the arbitration agreement with Fred Lind Manor. On remand, if the trial court concludes that Fred Lind Manor's representative threatened to fire him if he refused to sign the agreement despite the fact he raised concerns with its terms or indicated a lack of understanding, then the evidence here would not support Fred Lind Manor's claim that Adler knowingly and voluntarily agreed to arbitration, and thus implicitly waived his right to a jury trial. However, if as Fred Lind Manor contends, its representative explained the document and offered to answer Adler's concerns or questions, Adler's claim fails.

*790 Waiver
Adler also argues that Fred Lind Manor waived its right to compel arbitration by waiting until August 2003 before invoking the arbitration agreement. In Steele v. Lundgren, Division One of the Court of Appeals set forth the following three factors to determine whether a party waives his right to compel arbitration under the FAA: "`(1) knowledge of an existing right to compel arbitration, (2) acts inconsistent with that right, and (3) prejudice.'" 85 Wash.App. 845, 849, 935 P.2d 671, review denied, 133 Wash.2d 1014, 946 P.2d 401 (1997) (quoting Kinsey v. Bradley, 53 Wash.App. 167, 169, 765 P.2d 1329 (1989)); see also Brundridge v. Fluor Fed. Servs., Inc., 109 Wash.App. 347, 356, 35 P.3d 389 (2001), review denied, 146 Wash.2d 1022, 52 P.3d 520 (2002), cert. denied, 538 U.S. 906, 123 S.Ct. 1484, 155 L.Ed.2d 226 (2003).
Fred Lind Manor has not acted in a manner here which suggests waiver. Although Fred Lind Manor participated in EEOC mediation without mentioning the existence of the arbitration agreement, mediation does not amount to commencement of legal action. Rather, mediation provides a mechanism to promote settlement of disputes prior to legal action and is nonbinding on either party. See Steele, 85 Wash.App. at 854, 935 P.2d 671 ("[M]ediation, because it is not binding, is more a tool to facilitate settlement than an alternative to trial.... Parties should be able to pursue settlement at any time without being viewed as acting inconsistently with arbitration."). Further, Fred Lind Manor raised its defense of arbitration in its initial answer to Adler's complaint and promptly moved to compel arbitration after serving its answer. Thus, we conclude that Fred Lind Manor neither commenced litigation nor ignored arbitration.

Equitable Estoppel
Adler alternatively urges us to apply the principle of equitable estoppel against Fred Lind Manor. "Equitable estoppel may apply where there has been an admission, statement or act which has been justifiably relied upon to the detriment of another party." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 19, 43 P.3d 4 (2002). To establish equitable estoppel, Adler must show that Fred Lind Manor (1) made an admission, act, or statement inconsistent with a later claim; (2) Adler relied on Fred Lind Manor's admission, act, or statement; and (3) Adler would suffer injury if Fred Lind Manor "is allowed to contradict or repudiate the earlier admission, act or statement." Id. at 20, 43 P.3d 4.
Adler contends that "Fred Lind Manor, knowing that Mr. Adler was unaware of the Arbitration Agreement and its 180[-]day limitations period, deliberately failed to provide him notice of the agreement after they were put on notice of Mr. Adler's Charge of Discrimination." Br. of Pet'r at 35. Adler, however, fails to show that Fred Lind Manor acted inconsistently or made inconsistent statements. While Fred Lind Manor responded to Adler's EEOC complaint and participated in EEOC mediation without mentioning the existence of the arbitration agreement, these procedures do not amount to initiation of judicial proceedings; thus, Fred Lind Manor was not obligated to invoke arbitration. See Steele, 85 Wash.App. at 854, 935 P.2d 671. Because Adler must establish all three elements of equitable estoppel, he has failed to meet his burden here. See Dep't of Ecology, 146 Wash.2d at 19, 43 P.3d 4.

Attorney Fees
Lastly, Adler asserts that this court should award him attorney fees for this appeal pursuant to RAP 18.1(a) and RCW 49.60.030(2). RAP 18.1(a) advises that this court will award attorney fees "[i]f applicable law grants to a party the right to recover reasonable attorney fees or expenses on review before either the Court of Appeals or Supreme Court." However, the applicable law here, RCW 49.60.030(2) permits an attorney fees award only when a plaintiff prevails on his discrimination claim. It does not, as Adler contends, authorize attorney fees in connection with opposing a motion to compel arbitration.[17]

*791 III

CONCLUSION
We reject Adler's claims that the WLAD entitles him to a judicial forum, that Fred Lind Manor has waived its right to arbitrate this dispute, and/or that Fred Lind Manor should be equitably estopped from asserting arbitration. However, we conclude that the attorney fees and limitations provisions of the arbitration agreement are substantively unconscionable but sever these provisions from the agreement thus preserving the parties' intent to arbitrate their disputes. We remand to the trial court for determination, consistent with this opinion, of Alder's claims of procedural unconscionability, including whether Adler implicitly waived his right to a jury trial and the substantive conscionability of the fee-splitting provision.
ALEXANDER, C.J., IRELAND, C. JOHNSON, CHAMBERS, OWENS, SANDERS, FAIRHURST, and MADSEN. JJ., concur.
MADSEN, J. (concurring).
I write only to emphasize that the majority should not be read to suggest that an employee's disagreement with the terms of an arbitration agreement entered into upon employment or continued employment will be sufficient to invalidate that agreement. The Ninth Circuit has recently held that an arbitration agreement entered into as a condition of employment is enforceable, notwithstanding the purposes of and remedies available under Title VII. EEOC v. Luce, Forward, Hamilton & Scripps, 345 F.3d 742 (9th Cir.2003). The court overturned its prior case law to the contrary in light of Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In Gilmer, the United States Supreme Court held that an age discrimination claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621-634, was subject to compulsory arbitration pursuant to an agreement in a securities registration application.
Although the Ninth Circuit's decision might be criticized as not necessarily flowing from Gilmer in that it may have blurred the issue of compulsory arbitration with the issue of compelling an employee to enter into an arbitration agreement, its result nevertheless appears to be correct given the logic of Gilmer and Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001). In these and similar cases the court has declared that agreements providing for compulsory arbitration are enforceable, even as to claims of unlawful discrimination, and are enforceable in the employment setting. The Court's cases demonstrate a strong preference for arbitration regardless of the oftentimes compulsory nature of the agreements. Thus, it is no great leap of logic to conclude that regardless of whether one is given a choice of signing an arbitration agreement in order to obtain employment or to continue employment, the law and policy favoring enforcement of compulsory arbitration also favors enforcement of an agreement to which an employee must agree to become or remain employed. The employee will rarely be in a position to complain other than by choosing to decline employment or continued employment. Any other view would essentially negate arbitration agreements in the workplace, contrary to United States Supreme Court precedent.
I concur in the majority opinion.
NOTES
[1] Adler claims that he made a request to Mullen that Fred Lind Manor provide him with light duty pursuant to his doctor's orders, but Mullen failed to accommodate his hip injury.
[2] Adler also asserts that on other occasions, Mullen criticized Adler's claims to DLI, made fun of his accent, criticized him for hiring "foreigners," and ridiculed him for his Polish origin.
[3] Fred Lind Manor disputes Adler's claim that he never received a copy of the arbitration agreement. It notes that within one month of his termination, Adler requested a copy of his personnel file, which contained the arbitration agreement, and that he was permitted to inspect, examine, and copy his file. Fred Lind Manor contends Adler's action is verified by handwritten numbers he placed on the pages of his file while examining it. Fred Lind Manor's Answer to Mot. for Discretionary Review, Ex. 3, at 1-2; CP at 109-110.
[4] Washington State also has a strong public policy favoring arbitration of disputes. See Int'l Ass'n of Fire Fighters, Local 46 v. City of Everett, 146 Wash.2d 29, 51, 42 P.3d 1265 (2002); Mendez v. Palm Harbor Homes, Inc., 111 Wash.App. 446, 454, 45 P.3d 594 (2002); Perez v. Mid-Century Ins. Co., 85 Wash.App. 760, 765, 934 P.2d 731 (1997).
[5] Adler also cites to the United States Supreme Court's decision in Alexander v. Gardner-Denver Co., 415 U.S. 36, 57-58, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), to support his argument that arbitration agreements should not be enforced when employees allege statutory discrimination claims. Gardner-Denver, however, pertained to instances where a collective bargaining agreement exists. Id. In Gilmer v. Interstate/Johnson Lane Corp., the Court expressly disavowed Gardner-Denver in the context of valid individual employee-employer arbitration agreements governed by the FAA. 500 U.S. 20, 34-35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). It reasoned that:

There are several important distinctions between the Gardner-Denver line of cases and the case before us. First, those cases did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims.... Second, because the arbitration in those cases occurred in the context of a collective-bargaining agreement, the claimants there were represented by their unions in the arbitration proceedings.... Finally, those cases were not decided under the FAA, which, as discussed above, reflects a "liberal federal policy favoring arbitration agreements."
Id. at 35, 111 S.Ct. 1647 (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 625, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)).
[6] Adler also appears to contend that because his claims pertain to "`unwaivable statutory rights'" under the WLAD, this court should impose a higher standard of review of arbitration agreements to ensure fairness for plaintiffs. Br. of Pet'r at 23. To support his position, he cites to a recent California case holding that arbitration agreements which pertain to unwaivable statutory rights "`"must be subject to particular scrutiny."'" Id. (quoting Abramson v. Juniper Networks, Inc., 115 Cal.App.4th 638, 653, 9 Cal.Rptr.3d 422, 433 (2004) (quoting Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal.4th 83, 110, 6 P.3d 669, 99 Cal.Rptr.2d 745 (2000))). However, in Perry, the United States Supreme Court clearly stated that courts may not "rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable." 482 U.S. at 493 n. 9, 107 S.Ct. 2520. Accordingly, we refuse to impose a higher standard of review for arbitration agreements since by doing so we would impermissibly rely on the unique nature of agreements to arbitrate employment disputes as justification.
[7] Adler appears to argue that because the arbitration agreement is a contract of adhesion, it is substantively unconscionable. However, in Yakima County Fire (West Valley) Protection District No. 12 v. City of Yakima, 122 Wash.2d 371, 393, 858 P.2d 245 (1993), we noted that the determination of whether a contract is an adhesion contract is properly considered in ascertaining procedural unconscionability.
[8] Adler has not raised the issue of whether or not there was consideration for the agreement. Thus, we do not reach it here.
[9] If the trial court finds that Adler has proved his claim of procedural unconscionability, in accordance with the facts of this particular case such a finding will necessarily lead to a finding that Adler's waiver of his right to a jury was not "knowing, voluntary, and intelligent." If such a finding is ultimately made, the arbitration agreement would be void.
[10] Under Serold's signature, the agreement states "[w]itness." CP at 22. For the first time in these proceedings at oral argument, Adler suggested that because Serold signed the agreement as a "witness," she did not act as Fred Lind Manor's representative. He asserts that this lends further support to his claim that the agreement applies unilaterally. We do not find this argument compelling. Both Adler and Serold understood that she was acting in her capacity as Fred Lind Manor's representative when she presented the agreement to Adler, and according to Adler told him he "had to sign the piece of paper or [he] would be fired." See CP at 40, 85.
[11] The fee-splitting provision states, "[t]he arbitrator's fee and other expenses of the arbitration process shall be shared equally." CP at 22.
[12] RCW 49.60.030(2) provides that prevailing plaintiffs shall "recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable attorneys' fees."
[13] In Antonius v. King County, No. 74759-8, ___ Wash.2d ___, 103 P.3d 729 (Wash. Dec. 23, 2004), this court adopted the United States Supreme Court's analysis in National Railroad Passenger Corp., 536 U.S. 101, 122 S.Ct. 2061, for purposes of determining whether a hostile work environment claim under state law is timely as to all acts alleged to constitute the unlawful employment practice.
[14] We realize that this signals an exception to our general rule providing that:

"Whether a contract is entire or divisible depends very largely on its terms and on the intention of the parties disclosed by its terms. As a general rule a contract is entire when by its terms, nature and purpose, it contemplates and intends that each and all of its parts are interdependent and common to one another and to the consideration."
Saletic v. Stamnes, 51 Wash.2d 696, 699, 321 P.2d 547 (1958) (quoting Traiman v. Rappaport, 41 F.2d 336, 338 (1930)). However, Washington courts have not applied the rule set forth in Saletic to cases involving contracts that contain unconscionable provisions which could be severed from the remainder of the contract. See, e.g., Baffin Land Corp. v. Monticello Motor Inn, Inc., 70 Wash.2d 893, 903, 425 P.2d 623 (1967); State v. Turley, 149 Wash.2d 395, 400, 69 P.3d 338 (2003); Sherwood & Roberts-Yakima, Inc. v. Cohan, 2 Wash.App. 703, 713-14, 469 P.2d 574 (1970); State v. Plaggemeier, 93 Wash.App. 472, 482-83, 969 P.2d 519 (1999). In cases involving substantively unconscionable provisions, the Restatement approach best preserves the intent of the parties to arbitrate their disputes.
[15] On remand, in the event the trial court finds the fee-splitting provision to be substantively unconscionable, it may likewise sever that provision and still compel arbitration.
[16] Wash. Const. art. I, § 21 provides that:

The right of trial by jury shall remain inviolate, but the legislature may provide for a jury of any number less than twelve in courts not of record, and for a verdict by nine or more jurors in civil cases in any court of record, and for waiving of the jury in civil cases where the consent of the parties interested is given thereto.
[17] Adler also argues that he should receive attorney fees pursuant to RAP 14.2. RAP 14.2 provides that the commissioner or clerk "will award costs to the party that substantially prevails on review, unless the appellate court directs otherwise in its decision terminating review." However, RAP 14.2 permits attorney fees awards only if the awards are authorized by statute. See RAP 14.3. Adler, however, has no basis under RCW 49.60.030(2) to request attorney fees.