# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| PAGECOM, INC., a Washington corporation, | No. 53018-0-II |
| Respondent, | |
| v. | |
| SPRINT SOLUTIONS, INC., a foreign corporation; and ANNETTE JACOBS, a Sprint Area President and Washington resident, | UNPUBLISHED OPINION |
| Appellants. | |

SUTTON, A.C.J. — Sprint Solutions, Inc. and Annette Jacobs[1] appeal the superior court's order denying their motion to compel arbitration and dismiss the lawsuit after Pagecom, Inc. initiated this lawsuit regarding a contract dispute, despite the parties' agreement to arbitrate.

Sprint argues that the superior court erred by (1) maintaining jurisdiction under the Federal Arbitration Act (FAA) to determine the issue of arbitrability and denying Sprint's motion to compel arbitration because (2) the Dispute Resolution Clause is not ambiguous and is enforceable, and (3) neither Sprint's conduct nor the Dispute Resolution Clause were unconscionable. Sprint also argues that the superior court erred by (4) maintaining jurisdiction to determine the issue of

---

[1] We refer to Sprint and Annette Jacobs, a Sprint employee, together as "Sprint."

waiver and determining that Sprint waived its right to compel arbitration. Pagecom argues that (5) it has presented "uncontroverted evidence" that it is a franchisee and entitled to protection.

We hold that (1) the superior court did not err by maintaining jurisdiction to determine the issue of arbitrability; but the superior court erred by denying Sprint's motion to compel arbitration and ordering dismissal because (2) the Dispute Resolution Clause is not ambiguous and is enforceable, and (3) neither Sprint's conduct nor the Dispute Resolution Clause were unconscionable. We also hold that (4) the superior court erred by maintaining jurisdiction to determine the issue of waiver. Based on our holding, we (5) decline to reach Pagecom's argument regarding whether it is a franchisee. We reverse and remand with an order to the superior court to grant Sprint's motion to compel arbitration and dismiss.

FACTS

I. FACTUAL BACKGROUND

Sprint is a nationwide provider of wireless services and products. Sprint markets and sells its products to its customers through direct sales, as well as through "Authorized Representatives" (ARs) who enter into contracts with Sprint. Clerk's Papers (CP) at 4. ARs run their own storefronts, which are referred to as "doors." CP at 4.

Pagecom was formed in 1999 and has been a Sprint AR since 2005. At the time Pagecom initiated this lawsuit, it operated 13 doors. The owner of Pagecom, Jason Suprenant, previously owned another corporation that operated 39 doors selling T-Mobile goods and services.

Pagecom and Sprint entered into numerous versions of their contract, drafted by Sprint, since 2005, and Pagecom has, on multiple occasions, requested that Sprint modify particular

provisions. On each of these occasions, Sprint declined to make Pagecom's requested changes. The parties entered into the contract at issue (Agreement) in April of 2014.

The Agreement contains a mandatory dispute resolution agreement that states, "Disputes under this Agreement will be resolved according to Exhibit E." CP at 57. Exhibit E to the Agreement (Dispute Resolution Clause) contains the following relevant provisions:

> **1. Dispute Resolution.** All Disputes under this Agreement are subject to the following dispute resolution process. A Dispute means all controversies, disputes, or claims of every kind and nature arising out of or in connection with the negotiation, construction, validity, interpretation, performance, enforcement, operation, breach, continuation or termination of this Agreement. It is expressly understood by AR that this dispute resolution process may only be invoked regarding Sprint's right to terminate the AR Agreement after the termination has gone into effect. . . .
>
> **2. Mediation.** In the event of a Dispute pursued by AR, Sprint, may require that the Dispute be submitted to mediation. The mediation will occur at a location chosen by Sprint. If the Parties cannot agree to a mediator, a mediation and/or mediation rules, the mediation will proceed under the Commercial Mediation Procedures and Rules of the American Arbitration Association (AAA).
>
> > **(A)** Conduct of Mediation (if the Parties do not or cannot agree otherwise).
> >
> > . . . .
> >
> > > **(3)** Additional Rules for Mediation. The mediation:
> > >
> > > . . . .
> > >
> > > > **(c)** will take place at a location chosen by Sprint.
>
> **3. Arbitration.** AR party may not commence arbitration until a Dispute has been subject to mediation in accordance with this Agreement. Either party may initiate arbitration with respect to a Dispute by filing a written demand for arbitration pursuant to the Wireless Industry Arbitration Rules of the AAA. AR may only initiate arbitration after the 45th calendar day following the date that a request for mediation of such Dispute was first submitted, or, if earlier, the date that mediation is terminated. This applies to all causes of action, whether nominally a "claim", "counterclaim", or "cross-claim", arising under common law or any state or federal statute. The mediation may continue after the commencement of arbitration if the parties so desire.

. . . .

    **4. Waiver of Rights.** Sprint and AR each waive:

        **4.1** their rights to litigate Disputes in court . . . ;

        **4.2** to receive a jury trial; and

        **4.3** to participate as a plaintiff or as a class member in any claim on a class or consolidated basis or in a representative capacity.

CP at 108-110.

Sprint pays Pagecom according to a "Commission Plan" in the Agreement. CP at 43. Sprint may change the Commission Plan at any time under the Agreement. In June 2017, Pagecom contacted Sprint because it believed that other Sprint ARs were being more favorably compensated than Pagecom, in violation of Washington law. CP at 6. Pagecom outlined its complaints in a letter in order "to facilitate an appropriate discussion" and "engage in a meaningful resolution" of the issues. CP at 6. The parties engaged in communication for a number of months after this, both through telephonic and written correspondence. On November 21, 2017, Pagecom sent a letter to Sprint requesting mediation. That same day, Pagecom also submitted a request for mediation to the American Arbitration Association (AAA), requesting mediation to be held in Renton, Washington. Sprint responded to Pagecom's letter, stating that it would not agree to mediation being held in Renton.

The parties spoke on December 7, and they determined that mediation would not be successful, so the next step would be to move to arbitration. The parties agreed to hold the meditation request in abeyance through the holidays, and Pagecom agreed to provide additional financial information to Sprint by January 5, 2018. Pagecom provided this financial information to Sprint on January 22. In its letter, Pagecom offered a settlement, and asked if Sprint was "willing to recognize Washington as the proper locale for arbitration." Pagecom emailed Sprint

again on March 13, asking if "Sprint is still opposing mediation," and "if Sprint plann[ed] on opposing litigation (arbitration or otherwise) in Washington." CP at 324.

On March 31, Sprint gave notice to Pagecom that Pagecom was in violation of the Agreement because it was improperly operating other stores on behalf of T-Mobile, and the Agreement would terminate if Pagecom did not cure the violation within 30 days.[2] Pagecom asked Sprint to rescind the termination notice because a different business entity owned by Suprenant operated the T-Mobile stores. Pagecom initiated this lawsuit in Pierce County Superior Court on May 11. On June 8, Sprint rescinded its termination notice.

## II. PROCEDURAL BACKGROUND

Pagecom's complaint alleged that it is a franchisee under Washington law, and Washington's Franchise Investment Protection Act (FIPA)[3] applied. Pagecom also alleged that Sprint made changes to the compensation formula in the 2015 and 2017 contracts that were detrimental to Pagecom, and which violated FIPA. Pagecom alleged that Sprint breached the Agreement and its duty of good faith and fair dealing.

The parties engaged in mediation in Seattle on July 20, 2018, which proved to be unsuccessful. Following this, Sprint filed a motion to compel arbitration and dismiss the lawsuit. The superior court conducted three separate hearings on Sprint's motion to compel arbitration. Sprint argued that (1) the Dispute Resolution Clause was valid and thus, enforceable, and (2) the Dispute Resolution Clause encompassed the entire dispute. Pagecom argued that (1) Sprint waived

---

[2] This was later extended.

[3] Ch. 19.100 RCW.

arbitration through its conduct, (2) the Dispute Resolution Clause was illusory and unconscionable, and (3) the parties were in a franchise relationship and the Dispute Resolution Clause was illegal.

Following the initial briefing and hearing, the superior court ordered supplemental briefing to determine whether the court or an arbitrator had jurisdiction regarding the issue of arbitrability. The parties provided supplemental briefing, and the court held a second hearing on November 19. The court determined that it had jurisdiction to determine the issue of arbitrability. The court then set a third hearing to determine the remaining issues. The parties filed further briefing in support of their positions. The court held its final hearing on December 24, 2018. At this hearing, Pagecom stated the following:

> No, I don't really want to be in arbitration. Who would? What franchisee ever wants to be in arbitration? These are preprinted clauses that are there for a reason. They benefit the party that drafted the contract.
>
> I don't want to be off in Kansas listening to some Kansas lawyer who doesn't even have a statute telling me, "I don't quite get what's going on here." I don't want to have to educate him. I don't want to have to travel, the expense involved in traveling.[4]
>
> If we can be in court, we would rather be in court. I would also rather be bringing the motion that this thing is a franchise in front of [y]our [h]onor so we can just have that legal issue heard like the rights of appeal.
>
> I mean nobody really wants to go to arbitration when they're the party that wants something. The institution wants arbitration when it figures that may create procedural hang-ups and mute results.

Verbatim Report of Proceedings (VRP) (Dec. 24, 2018) at 46.

The court found that the Dispute Resolution Clause was ambiguous, the termination provision was unconscionable, Sprint's conduct was unconscionable, and Sprint waived its right

---

[4] The Agreement contained a provision stating that the laws of Kansas would govern any disputes.

to arbitration through its pre-litigation conduct. The court did not reach Pagecom's argument regarding whether it was a franchisee. The court also refused to sever the provisions it found unconscionable from the remainder of the Dispute Resolution Clause, stating:

> Well, if I sever the clause, which part of it do I sever? Do I sever the part that requires termination? Do I sever the part in paragraph 2 that says that, at least in one method of reading, Sprint may require that the dispute be submitted to mediation and that there is no right to compel mediation on behalf of the AR? And then if Sprint doesn't submit the dispute to resolution, what part of paragraph 3 do I sever, the part that says, you know, the AR may only initiate arbitration after the 45th calendar day following the date the request for mediation of such dispute was first submitted when, in fact, by some reading of the language, they don't have a right to request such a mediation?
>
> I don't think that cutting and pasting – you know, the Court's preference as to the contract language through this mechanism of severance is the solution to the problem.

VRP (Dec. 24, 2018) at 57. The court entered findings of fact and conclusions of law consistent with its oral ruling and denied Sprint's motion to compel arbitration and dismiss.

Sprint appeals the superior court's order denying its motion to compel arbitration and dismiss.

## ANALYSIS

### I. LEGAL PRINCIPLES

RCW 7.04A.070 governs disputes between parties as to whether an arbitration agreement exists. *Marcus & Millichap Real Estate Inv. Servs. of Seattle, Inc. v. Yates, Wood & Macdonald, Inc.*, 192 Wn. App. 465, 472, 369 P.3d 503 (2016). Courts must indulge every presumption in favor of arbitration, including in the contract language itself. *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 342, 103 P.3d 773 (2004). The FAA was adopted "in response to a perception that courts were unduly hostile to arbitration." *Epic Sys. Corp. v. Lewis*, -- U.S. --, 138 S. Ct. 1612,

7

1621, 200 L. Ed. 2d 889 (2018). Under the FAA, "an agreement in writing to submit to arbitration an existing controversy arising out of [] a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

We review an order denying a motion to compel arbitration de novo. *Neuson v. Macy's Dep't Stores, Inc.*, 160 Wn. App. 786, 792, 249 P.3d 1054 (2011). The burden of proving an agreement is not enforceable is on the party seeking to avoid arbitration. *McKee v. AT & T Corp.*, 164 Wn.2d 372, 383, 191 P.3d 845 (2008). If a party opposes a motion to compel arbitration, "the court shall proceed summarily to decide the issue. Unless the court finds that there is no enforceable agreement to arbitrate, it shall order the parties to arbitrate. If the court finds that there is no enforceable agreement, it may not order the parties to arbitrate." RCW 7.04A.070(1). General contract defenses apply to invalidate arbitration agreements. *McKee*, 164 Wn.2d at 383.

Arbitration is a matter of contract, and parties may be forced to submit disputes to arbitration only when they have agreed to submit those disputes to arbitration. *Hill v. Garda CL NW, Inc.*, 179 Wn.2d 47, 53, 308 P.3d 635 (2013). Gateway disputes regarding the validity of the contract or the arbitration provision "are preserved for judicial determination, as opposed to arbitrator determination, unless the parties' agreement clearly and unmistakably provides otherwise." *Hill*, 179 Wn.2d at 53.

## II. JURISDICTION TO DETERMINE ARBITRABILITY

Sprint argues that the superior court erred by maintaining jurisdiction under the FAA to determine the issue of arbitrability. We disagree, and hold that the superior court did not err by maintaining jurisdiction to determine the threshold issue of arbitrability.

Sprint argues that this case is analogous to *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 130 S. Ct. 2772, 177 L. Ed. 2d 403 (2010). But that case is distinguishable. In *Rent-A-Center*, the arbitration clause at issue

> provided for arbitration of all present, past or future disputes arising out of [the] employment with Rent-A-Center, including claims for discrimination and claims for violation of any federal . . . law. It also provided that [t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable.

*Rent-A-Center*, 561 U.S. at 65-66 (alterations in original) (internal citation and quotation marks omitted).

Here, the Dispute Resolution Clause states in relevant part that "[a]ll Disputes under this Agreement are subject to the following dispute resolution process. A Dispute means all controversies, disputes, or claims of every kind and nature arising out of or in connection with the negotiation, construction, validity, interpretation, performance, enforcement, operation, breach, continuation or termination of this Agreement." CP at 108, par. 1.

This case is not analogous to *Rent-A-Center* because the Dispute Resolution Clause here does not clearly and unmistakably establish that an arbitrator has jurisdiction over the threshold issue of arbitrability rather than the court. There is no specific and unequivocal language in the Dispute Resolution Clause here, as there was in the agreement in *Rent-A-Center*, conferring an unmistakable grant of that authority to the arbitrator. Further, the presumption is that the court will determine the issue of arbitrability rather than an arbitrator.

Because the presumption is that the court will determine the issue of arbitrability rather than the arbitrator, and because there is no specific unequivocal language showing an unmistakable

grant of that authority to the arbitrator, we hold that the superior court did not err by maintaining jurisdiction to determine the issue of arbitrability.

### III. MOTION TO COMPEL ARBITRATION

Sprint argues that the superior court erred by denying its motion to compel arbitration because (1) the Dispute Resolution Clause is not ambiguous and is enforceable, and (2) neither Sprint's conduct nor the Dispute Resolution Clause were unconscionable. Sprint also argues that (3) the superior court erred by maintaining jurisdiction over the issue of waiver and determining that Sprint waived its right to compel arbitration. We hold that (1) the Dispute Resolution Clause is not ambiguous and is enforceable, (2) neither Sprint's conduct nor the Dispute Resolution Clause were unconscionable, and (3) the superior court erred by maintaining jurisdiction to determine the issue of waiver.

### A. ENFORCEABILITY

The primary objective in contract interpretation is to ascertain the mutual intent of the parties at the time they executed the contract. *Int'l Marine Underwriters v. ABCD Marine, LLC*, 179 Wn.2d 274, 282, 313 P.3d 395 (2013). The focus is on determining the parties' intent based on the reasonable meaning of the contract language. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 503, 115 P.3d 262 (2005). We review the contract as a whole, interpreting particular language in the context of other contract provisions. *See Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 142 Wn.2d 654, 669-70, 15 P.3d 115 (2000). We must attempt to interpret contractual language in a way that gives effect to all provisions. *Realm, Inc. v. City of Olympia*, 168 Wn. App. 1, 5, 277 P.3d 679 (2012). We also attempt to harmonize clauses that

appear to conflict in an attempt to give effect to all of the contract provisions. *Realm, Inc.*, 168 Wn. App. at 5.

We will not read ambiguity into an unambiguous contract. *Berg v. Hudesman*, 115 Wn.2d 657, 669, 801 P.2d 222 (1990); *Syrovy v. Alpine Res., Inc.*, 122 Wn.2d 544, 551, 859 P.2d 51 (1993). A contract provision is ambiguous if its meaning is uncertain or is subject to two or more reasonable interpretations after we analyze the language and consider extrinsic evidence if appropriate. *Viking Bank v. Firgrove Commons 3, LLC*, 183 Wn. App. 706, 713, 334 P.3d 116 (2014). We generally construe ambiguities against the contract's drafter. *Viking Bank*, 183 Wn. App. at 713.

The superior court found that the Dispute Resolution Clause describing Pagecom's general "ability to initiate Dispute Resolution" was "at best ambiguous" because it found there were multiple ways of reading the clause. CP at 440. This was an error because the Dispute Resolution Clause is not susceptible of two or more reasonable meanings. The language clearly provides that if an issue arises, Sprint *may require* that the parties *mediate* the dispute. The language then proceeds to establish the procedure by which an AR can initiate *arbitration*.

The Agreement specifically states that Sprint may require mediation prior to the dispute being submitted to arbitration. If Sprint does not agree to mediation, Pagecom may initiate arbitration after the 45th calendar day following the date it submitted the request for mediation. The Agreement also provides that Pagecom may request mediation before the 45th day, if a mediation is terminated. The language is clear that Pagecom could have submitted the matter to mediation and if Sprint ignored it, Pagecom could have proceeded then to arbitration. The language is also clear that the Agreement anticipates that the parties attempt to mediate any

disputes, and if mediation is unsuccessful for any reason, then the dispute should proceed to arbitration.

Because the language is unambiguous, we hold that the superior court erred by finding it was ambiguous and thus, unenforceable.

B. UNCONSCIONABILITY

Sprint argues that the superior court erred by finding the Dispute Resolution Clause to be unconscionable because it mistakenly found that the contract was an adhesion contract and that Sprint's post-formation conduct was unconscionable. We hold that the Dispute Resolution Clause is neither substantively nor procedurally unconscionable, and that Sprint's post-formation conduct is irrelevant to the issue of this contract's enforceability.

A superior court's final conclusion of unconscionability is a question of law reviewed de novo. *McKee*, 164 Wn.2d at 383. We recognize both substantive and procedural unconscionability. *Adler*, 153 Wn.2d at 344. "[S]ubstantive unconscionability involves cases 'where a clause or term in the contract is . . . one-sided or overly harsh.'" *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 519, 210 P.3d 318 (2009) (some alterations in original) (internal quotation marks omitted) (quoting *Adler*, 153 Wn.2d at 344). "However, such unfairness must truly stand out. 'Shocking to the conscience,' 'monstrously harsh', and 'exceedingly calloused' are terms sometimes used to define substantive unconscionability." *Torgerson*, 166 Wn.2d at 519 (internal quotation marks omitted) (quoting *Adler*, 153 Wn.2d at 344-45)).

Procedural unconscionability is "'the lack of meaningful choice, considering all the circumstances surrounding the transaction including [t]he manner in which the contract was entered, whether each party had a reasonable opportunity to understand the terms of the contract,

and whether the important terms [were] hidden in a maze of fine print.'" *Adler*, 153 Wn.2d at 345 (alteration in original) (internal quotation marks omitted) (quoting *Nelson v. McGoldrick*, 127 Wn.2d 124, 131, 896 P.3d 1258 (1995)). Those factors should "'not be applied mechanically without regard to whether . . . a meaningful choice existed.'" *Adler*, 153 Wn.2d at 345 (quoting *Nelson*, 127 Wn.2d at 131).

We look to the following factors to determine whether a contract is an adhesion contract: "'(1) whether the contract is a standard form printed contract, (2) whether it was prepared by one party and submitted to the other on a take it or leave it basis, and (3) whether there was no true equality of bargaining power between the parties.'" *Adler*, 153 Wn.2d at 347 (internal quotation marks omitted) (quoting *Yakima County Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 393, 858 P.2d 245 (1993)). "The fact that a contract is an adhesion contract is relevant but not determinative." *Burnett v. Pagliacci Pizza, Inc*, No. 97429-2, slip. op. at 15 (Wash. Aug. 20, 2020). "An adhesion contract is not necessarily procedurally unconscionable." *Burnett*, slip. op. at 15. "The key inquiry is whether the party lacked meaningful choice." *Burnett*, slip op. at 15.

1. SUBSTANTIVELY UNCONSCIONABLE

The Dispute Resolution Clause is not substantively unconscionable. The superior court held that the Dispute Resolution Clause is unconscionable because it prevents Pagecom from initiating arbitration. However, this is based on an incorrect reading of the Dispute Resolution Clause. Pagecom mistakenly argued that it could not initiate arbitration unless and until mediation occurred. And the court seemed to conflate this argument with the termination provision to support its finding that the Dispute Resolution Clause was unconscionable.

The relevant language clearly states that Sprint *may require* the parties to mediate a dispute, and it then expressly lays out how Pagecom may initiate arbitration—if Sprint does not require mediation, mediation fails, or on the "45th calendar day following the date that a request for mediation of such Dispute was first submitted." CP at 109. The plain language of the Dispute Resolution clause clearly allows Pagecom to initiate arbitration. Pagecom submitted a request for mediation on November 21, 2017, thereby commencing a 45-day period after which it could initiate arbitration. Therefore, even though Sprint chose not to mediate during that 45 day period, Pagecom could have initiated arbitration on or after January 4, 2018, according to the express terms of the Dispute Resolution Clause.

Pagecom also argues that the termination provision in section one is unconscionable because it does not allow for Pagecom to initiate mediation until termination of the Agreement is final. This argument fails. Pagecom submitted a request for mediation on November 21, 2017. At this point, the only dispute was Pagecom's claim that it was being unfairly compensated. As discussed above, Pagecom had the ability to then initiate arbitration on January 4, even though Sprint was not willing to mediate in Washington. The termination provision in the Dispute Resolution Clause is irrelevant for the purposes of the dispute regarding the compensation plan. Moreover, Pagecom's lawsuit sought only an injunction to stop Sprint from terminating the Agreement, which was accomplished when Sprint rescinded the termination notice. Termination is no longer an issue.

Because the Dispute Resolution Clause does not include any language barring Pagecom from initiating arbitration, and because the termination provision is irrelevant for purposes of this appeal, we hold that the Dispute Resolution Clause is not substantively unconscionable.

2. PROCEDURALLY UNCONSCIONABLE

The Dispute Resolution Clause is not procedurally unconscionable. The court found Sprint's post-formation conduct callous and unconscionable.[5] However, Sprint's conduct here is irrelevant in determining whether the Dispute Resolution Clause is unconscionable. We do not base a determination of procedural unconscionability on a party's post-formation conduct. *Adler*, 153 Wn.2d at 345 (stating the three factors a court looks at when determining whether a contract is procedurally unconscionable). And, as discussed above, even if Sprint's conduct regarding denying mediation in Washington was unconscionable, Pagecom was never barred from initiating arbitration under the language of the Dispute Resolution Clause.

Finally, this is not an adhesion contract because Pagecom is run by a sophisticated owner who has over 20 years of experience in various businesses, and it has negotiated contracts with Sprint in the past. CP at 4, 342, 346. Because Pagecom did not lack a meaningful choice as to whether to enter into the Agreement with the Dispute Resolution Clause, the contract is not an adhesion contract.

Because Sprint's post-formation conduct is irrelevant to determine whether the Dispute Resolution Clause is procedurally unconscionable, and because this was not an adhesion contract, we hold that the Dispute Resolution Clause is not procedurally unconscionable.

C. WAIVER

Sprint argues that the superior court erred by maintaining jurisdiction over the issue of waiver. We agree.

---

[5] "After this lawsuit had been filed Sprint rescinded the termination notice. Such conduct is found to be callous and unconscionable." CP at 441.

> [C]ourts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration. These procedural matters include claims of "waiver, delay, or a like defense to arbitrability."

*BG Group, PLC v. Republic of Argentina*, 572 U.S. 25, 34-35, 134 S. Ct. 1198, 188 L. Ed. 2d 220 (2014) (internal citation omitted) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983).

Arbitration is a matter of contract, and "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 84 L. Ed. 2d 158 (1985)). Procedural questions growing out of the dispute and bearing on its final disposition should be left to the arbitrator. *Yakima County Law Enforcement Officers Guild v. Yakima County,* 133 Wn. App. 281, 288, 135 P.3d 558 (2006).

In *River House Development, Inc. v. Integrus Architecture, P.S.*, 167 Wn. App. 221, 232, 272 P.3d 289 (2012), we distinguished between waiver caused by delay and waiver caused by litigation conduct. We reaffirmed this distinction in *Saili v. Parkland Auto Center, Inc.*, 181 Wn. App. 221, 226, 329, P.3d 915 (2014). While we did not explicitly address the issue of jurisdiction, we cited to three Washington cases where the court determined the party seeking arbitration had waived its right to compel arbitration. *Saili*, 181 Wn. App. at 226-27. In all three of these cases, the party seeking arbitration had taken action during litigation which the respective courts found to constitute waiver. *Saili*, 181 Wn. App. at 226-27.

Here, Pagecom alleges that Sprint waived its right to compel litigation due to its conduct *before* Pagecom filed the lawsuit. As a result, the arbitrator should determine the issue of waiver

rather than the superior court. We hold that the superior court erred by maintaining jurisdiction over the issue of waiver.

## IV. FRANCHISEE

Although not addressed by the superior court, Pagecom argues that we should find that it is a franchisee entitled to FIPA's protections. Based on our holdings, we decline to reach this issue.

The legislature enacted FIPA to curtail franchisor sales abuses and unfair competitive practices. *East Wind Express, Inc. v. Airborne Freight Corp.*, 95 Wn. App. 98, 102, 974 P.2d 369 (1999). RCW 19.100.180 provides a list of rights and prohibitions that "govern the relation between the franchisor or subfranchisor and the franchisees," including dealing in good faith and practicing unfair competition.

We do not make initial findings of fact and, where the superior court fails to enter sufficient findings, remand is the generally proper remedy. *State v. J.C.*, 192 Wn. App. 122, 133, 366 P.3d 455 (2016); *see also Bale v. Allison*, 173 Wn. App. 435, 458, 294 P.3d 789 (2013). "However, '[w]hen a trial court fails to make any factual findings to support its conclusion, and the only evidence considered consists of written documents, an appellate court may, if necessary, independently review the same evidence and make the required findings.'" *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 808, 225 P.3d 213 (2009) (alteration in original) (quoting *In re Firestorm 1991*, 129 Wn.2d 130, 135, 916 P.2d 411 (1996)).

Because the superior court explicitly chose not to make any findings or conclusions regarding this issue, and because the superior court erred by denying Sprint's motion to compel

arbitration, this is a proper issue for the arbitrator, and given our holdings, we decline to consider this issue.

CONCLUSION

We reverse and remand with an order to the superior court to grant Sprint's motion to compel arbitration and dismiss.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, A.C.J.

I concur:

WORSWICK, J.

MELNICK, J. (dissent) — Because the trial court did not err in denying Sprint Solutions's motion to compel arbitration and dismiss Pagecom's lawsuit under the terms of the written "Dispute Resolution" provisions, I respectfully dissent. Pagecom had no ability to initiate mediation, and except in rare circumstances not at issue here, it had no ability to initiate its claims in arbitration.[6]

The salient facts I rely on are as follows: Pagecom has been a Sprint authorized representative (AR) since 2005. "Pagecom's entire business is associated with being a Sprint Authorized Retailer." Clerk's Papers (CP) at 345. The parties have entered into numerous contracts since 2005. On multiple occasions, Pagecom has asked Sprint to modify the terms of the AR agreement (Agreement) before renewals. Sprint has consistently said it will not change any terms of the Agreement. It has never done so.

Pagecom and Sprint had disagreements since late 2015. By mid-2017, Pagecom proposed mediation; however, Sprint refused. Pagecom proposed arbitration, but Sprint refused. Sprint said that Pagecom "had no right to initiate arbitration because mediation had not occurred." CP at 343. Sprint refused to engage in mediation.

Pagecom filed the instant lawsuit. After that, mediation did occur. Sprint then filed a motion to compel arbitration and dismiss the lawsuit. The trial court denied the motion.

The heart of this dispute is the interpretation of the Dispute Resolution portion of the Agreement between Sprint and Pagecom, drafted by Sprint. The Dispute Resolution clauses start

---

[6] I agree with the majority on the applicable law of this case. I diverge on how the facts apply to the law. I also rely on *Burnett v. Pagliacci Pizza, Inc.*, No. 78356-4-I (Wash. Ct. App. June 17, 2019) (unpublished) https://www.courts.wa.gov/opinions/pdf/783564.pdf., *aff'd*, 470 P.3d 486 (2020).

with a broad statement that, "All Disputes under this Agreement are subject to the following dispute resolution process." CP at 108. It then has sections identified for Mediation, Arbitration, Waiver of Rights, No Class Arbitration, Injunctive Relief, and Survival.

In pertinent part, the Mediation section states, "In the event of a Dispute by AR, Sprint[] may require that the Dispute be submitted to mediation." CP at 108. The section on mediation does not contain any language that Pagecom can initiate mediation. Sprint obviously read these provisions in that manner when it refused to participate in mediation.

Then, as relevant here, the Arbitration section states, Pagecom "may not commence arbitration until a Dispute has been subject to mediation in accordance with this Agreement." CP at 109. It further says that either party may initiate arbitration by filing a written demand. However, if Sprint refused to mediate, as it did in this case, Pagecom could not commence arbitration. The plain wording of the Agreement supports this position.

The majority glosses over Pagecom's contention that it cannot initiate mediation. The majority's conclusion that Pagecom can initiate arbitration after the 45th calendar day upon one of two conditions being satisfied, is read out of context and not in conjunctions with the pre-condition previously noted, i.e. Pagecom cannot start arbitration until mediation has occurred.

The Agreement is also vague and subject to more than one interpretation. Sprint wrote the Dispute Resolutions provisions. Sprint always refused to amend any provisions of the contract.

The record shows that Sprint interpreted the Agreement as I have. Pagecom attempted to invoke the alternative dispute resolution provisions; however, Sprint thwarted them. Sprint not only refused to negotiate the terms of the renewal contracts, but it unilaterally controlled whether

20

alternative dispute resolution would occur.  Sprint refused Pagecom's request for mediation and its request for arbitration.  Thus, the trial court did not err in denying Sprint's motion to compel arbitration and dismiss Pagecom's lawsuit.  I respectfully dissent.

_____
MELNICK, J.