IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KESTER PHILLIPS,<br><br>　　　　　Respondent,<br><br>　　　　v.<br><br>SWEDISH HEALTH SERVICES, a<br>Washington nonprofit corporation,<br><br>　　　　　Appellant. | No. 86422-0-I<br><br>DIVISION ONE<br><br>ORDER GRANTING MOTION<br>TO PUBLISH |

Appellant filed a motion to publish on April 4, 2025. A panel of the court called for an answer to the motion which was filed by respondent on April 16, 2025. After consideration of the motion and answer the panel has the determined that the motion shall be granted.

Now, therefore, it is hereby

ORDERED that the motion to publish is granted.

FOR THE COURT:

_____

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KESTER PHILLIPS,<br><br>        Respondent,<br><br>    v.<br><br>SWEDISH HEALTH SERVICES, a<br>Washington nonprofit corporation,<br><br>        Appellant. | No. 86422-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Dr. Kester Phillips sued his former employer, Swedish Health Services, for constructive discharge and racial discrimination under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW. Swedish appeals the trial court's denial of its motion to compel arbitration. Because the arbitration provision in Phillips' employment agreement with Swedish is valid and enforceable, we reverse and remand with instruction to compel arbitration.

FACTS

On June 23, 2020, Kester Phillips, a Black physician, signed a written offer of employment with Swedish Health Services to become a second neuro-oncologist at the Ivy Brain Tumor Center. As part of his employment terms, Phillips agreed to Swedish's dispute resolution agreement (DRA), which included an arbitration provision. The provision contained the following terms:

    1.    Policy. The parties hope there will be no disputes arising from their relationship. If a dispute arises, the parties shall first try to

negotiate a fair and prompt resolution. If they are unsuccessful, *the dispute shall be resolved by binding arbitration. The parties acknowledge* that *they intend to give up their right to have any dispute decided in court by a judge or jury. The provisions of the Washington arbitration statute, Chapter 7.04A RCW, are incorporated herein to the extent not inconsistent with the other terms of this Agreement.*

2.    Binding Arbitration. *Any controversy or claim between the parties arising from or relating to this Agreement shall be resolved by an arbitration* to be commenced in the manner provided in RCW 7.04A.090, provided, however, that all statutes of limitations that would otherwise apply shall apply to disputes submitted to arbitration. This process applies regardless of when the dispute arises and will remain in effect after this Agreement terminates, regardless of the reason it terminates.

. . . .

2.3.    Arbitration Procedures. *Whether a controversy or claim is covered by this Agreement shall be determined by the arbitrator.* The arbitration shall be conducted under the American Arbitration Association rules in effect on the date the arbitrator is selected, to the extent consistent with this Exhibit. *There shall be no discovery or dispositive motions* (such as motions for summary judgment or to dismiss or the like), *but the arbitrator may authorize such discovery as is necessary* for a fair hearing of the dispute. . . . The parties wish to minimize the cost of the dispute resolution process. To that end, *the arbitrator shall limit live testimony and cross-examination* and shall require the parties to submit some or all of their case by written declaration, to the extent he/she determines that can be done without jeopardizing a fair hearing of the dispute.

(Emphasis added.)   Phillips began working on August 24, 2020 and Swedish promoted him to medical director of the Ivy Brain Tumor Center in January 2021. On June 1, 2023, Phillips resigned.  Six months later, on December 11, he filed a lawsuit against Swedish, alleging constructive discharge and race discrimination under WLAD, chapter 49.60 RCW.  Phillips argued that RCW 49.44.085 rendered the arbitration provision unenforceable.

On January 19, 2024, Swedish moved to compel arbitration pursuant to the DRA Phillips entered into with Swedish. It argued that both the Federal Arbitration Act (FAA), 9 U.S.C. sections 1 to 16, and Washington's Uniform Arbitration Act (WUAA), chapter 7.04A RCW, favor arbitration and that upon a motion by a party showing an agreement to arbitrate, the court must order the parties to do so. Swedish further averred that the arbitration provision expressly and unambiguously delegated the issue of arbitrability to the arbitrator. It contended that because Phillips' claims "arose from or related to" his employment, they fell squarely within the scope of the arbitration agreement.

Phillips opposed the motion on January 26, asserting that the arbitration provision did not cover Swedish's discriminatory conduct and was substantively unconscionable. He argued that RCW 49.44.085 voided any arbitration agreement requiring employees to arbitrate discrimination claims. Phillips also claimed the FAA did not apply because the arbitration provision of the DRA failed to invoke and was silent on the jurisdiction of the FAA. He further averred that his local Seattle-based role did not involve interstate commerce. Phillips also contended the DRA did not apply to his claim because he brought a statutory claim, not one for breach of contract. He additionally argued that the DRA was substantively unconscionable because it limited damages, discovery, required confidentiality, and forced negotiation before legal action.

In its January 30 reply, Swedish argued that Phillips conceded the DRA's existence by not disputing its execution. It maintained that the FAA applied automatically to employment agreements involving interstate commerce and

preempted RCW 49.44.085. As evidence of interstate commerce, Swedish pointed to its operation of five hospitals and approximately 200 clinics in the Puget Sound region, and its service to out-of-state patients. Swedish next argued that RCW 49.44.085, even if applicable, voids agreements only "if it requires an employee to resolve claims of discrimination in a dispute resolution process *that is confidential*," while Swedish's arbitration provision did not mandate confidentiality. (Emphasis added.) Lastly, it argued that the DRA was not unconscionable, but even if certain terms of the arbitration provision were unconscionable, the court could sever those terms and enforce the remainder of the DRA.

On February 13, the trial court denied Swedish's motion to compel arbitration. Swedish timely appealed.

ANALYSIS

We review a trial court's decision to compel or deny arbitration de novo. *Saleemi v. Doctor's Assocs.,* 176 Wn.2d 368, 375, 292 P.3d 108 (2013). The party opposing the arbitration bears the burden of proving the agreement is unenforceable. *Burnett v. Pagliacci Pizza, Inc.*, 196 Wn.2d 38, 46-47, 470 P.3d 486 (2020). Washington policy favors arbitration. *Id.* at 46; *see also* RCW 7.04A.060. We must indulge every presumption in favor of arbitration, including in the contract language itself.[1] *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 342, 103 P.3d 773 (2004).

---

[1] Swedish notes this presumption in its opening brief. However, recent case law calls into question whether such a presumption in favor of arbitration under the FAA remains. *See Armstrong v. Michaels Stores, Inc.*, 59 F.4th 1011, 1014 (9th Cir. 2023) ("[C]ourts 'must hold a party to its arbitration contract just as the court would to any other kind'" and "'may not devise novel rules to favor arbitration over litigation.'") (quoting *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, 142 S. Ct.

- 4 -

Here, the parties do not dispute the existence of the arbitration agreement that expressly delegates the question of arbitrability to the arbitrator. Phillips admits that the arbitration provision is a valid and binding contract between the parties to resolve certain disputes arising from his employment before the American Arbitration Association (AAA). Phillips, however, avers that he "did not consent to be discriminated against on the basis of his race when he took the job at Swedish, did not consent to arbitrating discrimination claims, and his Employment Agreement did not require him to do so."

## I. Grounds for Invalidating Arbitration Agreement

Throughout his briefing, Phillips avers that the DRA is void ab initio. He first argues that the trial court correctly denied Swedish's motion to compel arbitration because RCW 49.44.085 prohibits mandatory arbitration of discrimination claims under the WLAD. Second, he argues that the DRA is substantively unconscionable.

### A. WLAD

Phillips contends that RCW 49.44.085 renders void and unenforceable any arbitration agreement that mandates an employee arbitrate discrimination claims. Swedish counters that RCW 49.44.085, on its face, does not apply to Phillips' claims because the arbitration provision does not mandate confidentiality. Swedish asserts that even if it did, the FAA preempts RCW 49.44.085.

RCW 49.44.085 reads as follows:

---

1708, 212 L. Ed. 2d 753 (2022)). Because we determine that the agreement here is unambiguous and, more critically, as neither party has presented argument challenging this presumption, we do not reach this issue.

> *A provision of an employment contract or agreement is against public policy and is void and unenforceable if it requires an employee to waive the employee's right to publicly pursue a cause of action arising under chapter 49.60 RCW or federal antidiscrimination laws or to publicly file a complaint with the appropriate state or federal agencies, or if it requires an employee to resolve claims of discrimination in a dispute resolution process that is confidential.*

(Emphasis added.) In his response brief, Phillips reiterates that the arbitration provision is void and unenforceable under RCW 49.44.085 because it compels arbitration of his discrimination claims. However, later in that same brief, while discussing the anti-waiver provision of RCW 49.44.085, Phillips concedes that WLAD claims can be arbitrated so long as arbitration does not impose confidentiality. He further acknowledges that RCW 49.44.085 does not specifically target arbitration or any fundamental aspect of arbitration, and an employee may not waive the right to bring a WLAD claim in either court or in arbitration.

Here, Phillips did not give up his right to publicly pursue a WLAD claim by signing the DRA, only the ability to raise the issue in court. Given his concession, we hold that his WLAD claim is arbitrable and remand with instruction to compel arbitration. Furthermore, our Supreme Court in *Adler* rejected the argument that WLAD requires a judicial forum for discrimination claims. 153 Wn.2d at 342-43. The court held that when a "valid individual employee-employer arbitration agreement exists, the FAA requires that employees arbitrate federal and state law discrimination claims." *Id.* at 343-44 (first citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 27-28, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); and then citing *Perry v. Thomas,* 482 U.S. 483, 491, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987)).

*Adler* is controlling and Phillips neither cites *Adler* nor provides authority to distinguish it.

> B. FAA Preemption

Philips asserts that the FAA does not apply because the arbitration provision of the DRA invokes the WUAA.[2]  He next contends that the FAA requires explicit invocation, and his role as a local physician does not involve interstate commerce for purposes of the FAA.  He avers that the FAA cannot preempt RCW 49.44.085 unless directly applied to the specific claims at issue.  He argues that preemption is a claim-driven defense and applies solely when federal and state laws conflict on a specific claim.  He maintains that the DRA invoked chapter 7.04A RCW and Swedish elected a Washington statute in its arbitration provision with its employees, so it must be governed by Washington law.

Swedish, however, avers the FAA preempts RCW 49.44.085 even when the DRA expressly provides for arbitration only pursuant to Washington law.  It cites *Mastrobuono v. Shearson Lehman Hutton, Inc.*[3] to argue the statute need not be mentioned in an arbitration provision to apply.  In *Mastrobuono*, the Supreme Court discussed enactment of the FAA and how in *Allied-Bruce Terminix Cos. v. Dobson,*[4]

---

[2] During oral argument before this court, Phillips' counsel referenced an unpublished case, *Coleman v. Impact Public Schools*, which was not cited in his response brief.  No. 84421-1-I (Wash. Ct. App. Feb. 12, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/844211.pdf. Counsel argued that the FAA applied in *Coleman* because the arbitration agreement at issue in that case was silent on whether the FAA or WUAA should govern.  Wash. Court of Appeals oral arg., *Phillips v. Swedish Health Servs.*, No. 86422-0-I (Jan. 22, 2025), 12 min., 28 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-1-court-of-appeals-2025011478/?eventID=2025011478.  But we made no such determination in *Coleman*.  In that case, the parties did not dispute whether the FAA applied to their employment agreement.

[3] 514 U.S. 52, 55, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995).

[4] 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995).

after determining that the FAA applied to the parties' arbitration agreement, the court concluded that the federal statute preempted Alabama's statutory prohibition on written, predispute arbitration agreements. 514 U.S. at 56. Swedish also reiterates that Phillips' employment implicates interstate commerce because it purchases goods from out-of-state suppliers and provides services to out-of-state patients. It relies on *Capriole v. Uber Technologies, Inc.* in its argument that the FAA applies broadly to any contract "involving commerce." 460 F. Supp. 3d 919, 929 (N.D. Cal. 2020), *aff'd*, 7 F.4th 854 (9th Cir. 2021). We agree with Swedish.

Our Supreme Court and this court have held numerous times that the FAA applies to all employment contracts except those involving certain transportation workers. *See, e.g., Adler*, 153 Wn.2d at 341; *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301, 103 P.3d 753 (2004); *Oakley v. Domino's Pizza LLC*, 23 Wn. App. 2d 218, 226, 516 P.3d 1237 (2022), *review denied*, 200 Wn.2d 1028 (2023); *Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 893, 28 P.3d 823 (2001); *Brundridge v. Fluor Fed. Servs., Inc.*, 109 Wn. App. 347, 353, 35 P.3d 389 (2001). Section 2 of the FAA provides that written arbitration agreements "'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Adler*, 153 Wn.2d at 341 (emphasis omitted) (quoting 9 U.S.C. § 2). The FAA creates a substantive body of federal law on arbitration that state and federal courts must apply. *Romney v. Franciscan Med. Grp.*, 186 Wn. App. 728, 734, 349 P.3d 32 (2015). "'[T]he FAA does not require parties to arbitrate when they have not agreed to do so, . . . [i]t simply requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their

terms.'" *Satomi Owners Ass'n v. Satomi, LLC*, 167 Wn.2d 781, 798, 225 P.3d 213 (2009) (alterations in original) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees*, 489 U.S. 468, 478, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989)).

Moreover, when tasked with determining whether the FAA applied to an employment contract in *Walters v. A.A.A. Waterproofing, Inc.,* this court relied on dicta from *Harrison v. Nissan Motor Corp. in U.S.A.*, that noted "'as a threshold matter . . . for the FAA to apply, the party seeking to compel FAA arbitration must show the existence of a written agreement that contains an arbitration clause and affects interstate commerce.'" 120 Wn. App. 354, 358, 85 P.3d 389 (2004) (alteration in original) (quoting *Harrison v. Nissan Motor Corp. in U.S.A.,* 111 F.3d 343, 348 n.8 (3rd Cir. 1997), *modified on remand*, noted at 128 Wn. App. 1070 (2005). Because Swedish demonstrated the existence of a written agreement that contains an arbitration clause and that its operations involve commerce across state lines, we conclude that the FAA applies to the arbitration provision.

Phillips next argues that the arbitration provision does not apply because he is bringing a statutory claim to be free from discrimination, not a "breach of contract" claim. He cites a Ninth Circuit case, *Mundi v. Union Security Life Insurance Co.*,[5] to argue that an employment contract cannot be stretched to include statutory relief from discrimination, even if the discrimination occurred in the context of employment. There, Mundi signed a credit agreement with an arbitration clause. *Mundi,* 555 F.3d at 1043. After his death, Mundi's insurer, who was not a party to the arbitration agreement, tried to compel arbitration of his widow's claims. *Id*. The

---

[5] 555 F.3d 1042, 1045 (9th Cir. 2009).

court declined, holding that the dispute was not within the scope of the arbitration provision. *Id*. at 1045. *Mundi* provides no support for Phillips' position.

This court already examined whether the FAA applies to statutory discrimination claims in *Tjart* and held that state discrimination claims are arbitrable to the same extent as Title VII claims because "'[p]arallel state anti-discrimination laws are explicitly made part of Title VII's enforcement scheme.'" 107 Wn. App. at 894 (alteration in original) (quoting *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 n.1 (9th Cir. 1994)). The court in *Tjart* also relied on *Circuit City Stores, Inc. v. Adams*,[6] where the "Supreme Court held that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination, and that 'by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.'" *Id*. at 899 (internal quotation marks omitted) (quoting *Circuit City*, 532 U.S. at 123). Under this framework, Phillips' WLAD claim is arbitrable. Phillips cites no authority distinguishing *Tjart*. Accordingly, we conclude that the FAA applies to the DRA.

C.    Unconscionability

Arbitration is a matter of contract, and parties may only be compelled to arbitrate disputes they agreed to submit to arbitration. *Hill v. Garda CL Nw., Inc.*, 179 Wn.2d 47, 53, 308 P.3d 635 (2013). When the validity of an arbitration agreement is challenged, ordinary contract defenses such as unconscionability may

---

[6] 532 U.S. 105, 121 S. Ct. 1302 149 L. Ed. 2d 234 (2001).

render the agreement unenforceable. *McKee v. AT&T Corp.*, 164 Wn.2d 372, 383, 191 P.3d 845 (2008). Determining unconscionability is a decision for the court and not the arbitrator. *Brown v. MHN Gov't Servs., Inc.*, 178 Wn.2d 258, 264, 306 P.3d 948 (2013). "Substantive unconscionability exists when a provision in the contract is one-sided." *Burnett*, 196 Wn.2d at 57. The provision is one-sided or overly harsh if it is "shocking to the conscience, monstrously harsh, and exceedingly calloused." *Id.*

Here, Phillips avers that provisions limiting monetary remedies, the statutory remedy, confidentiality, and discovery render the arbitration agreement here substantively unconscionable.

### 1. Remedies Limitation

The arbitration agreement provides, in part, "If a court, applying applicable substantive law, would be authorized to award punitive or exemplary damages, the arbitrator(s) shall have the same power, but the arbitrator(s) otherwise shall not award punitive or exemplary damages." Phillips argues this provision is substantively unconscionable because it preemptively restricts the types of damages available to the claimant, regardless of what the law provides. He, however, concedes that his WLAD claim, which does not provide for punitive damages, is unaffected. Because this remedies limitation applies to claims for punitive or exemplary damages under common law, it has no present impact here.

### 2. Confidentiality

Phillips next argues that the arbitration provision is unconscionable because the AAA rules incorporated into the DRA mandate confidentiality. He relies on *Zuver*

and *McKee* to argue that our Supreme Court has regularly invalidated attempts to require confidential arbitrations as substantively unconscionable. Phillips also contends that confidentiality requirements for discrimination claims are unconstitutional under article I, section 10 of the Washington Constitution.

Swedish counters that Phillips mischaracterizes the AAA rules and notes that their DRA does not have a confidentiality provision. It further argues that rule 23 of the AAA does not mandate blanket confidentiality, so the arbitrator has to follow the law. In full, rule 23 states the following:

> The arbitrator shall maintain the confidentiality of the arbitration and shall have the authority to make appropriate rulings to safeguard that confidentiality, *unless the parties agree otherwise or the law provides to the contrary*.

(Emphasis added.) Swedish also contends that this court has previously rejected this same argument in *Romney* where the parties incorporated the AAA rules for the resolution of employment disputes. 186 Wn. App. at 744-45. In *Romney*, we held that reliance on *Zuver* and *McKee* for this contention is misplaced. *Id*. at 745. In *Zuver*, we concluded that the confidentiality provision in the employment contract was substantively unconscionable because it excessively favored the employer and gave the employer significant legal recourse. *Id.* We further explained that *McKee* involved an adhesion contract and held that the policy of confidentiality was in direct conflict with public policy, specifically one that is particularly important when dealing with consumers. *Id*.

Here, the confidentiality clause is not inherently one-sided or harsh. It strikes a balance by allowing disclosure where the law requires it. We agree with Swedish and conclude that the confidentiality provision is not substantively unconscionable.

### 3.    Discovery Limitation

Section 2.3 of the DRA provides the following:

> There shall be no discovery or dispositive motions (such as motions for summary judgment or to dismiss or the like), but the arbitrator may authorize such discovery as is necessary for a fair hearing of the dispute. . . . The arbitrator shall limit live testimony and cross-examination and shall require the parties to submit some or all of their case by written declaration, to the extent he/she determines that can be done without jeopardizing a fair hearing of the dispute.

Phillips asserts that this limitation on discovery favors Swedish and prevents him from adequately presenting his claims. He cites a number of state and federal cases, including Division Two's opinion in *Woodward v. Emeritus Corp.*[7] and the D.C. Circuit Court opinion *Booker v. Robert Half International, Inc.*,[8] to argue that courts have refused to enforce arbitration provisions when they hinder the ability to present a claim. He also argues that this provision is contrary to RCW 7.04A.170(2) because it does not allow depositions.

Swedish avers that discovery limitations are a well-recognized feature of arbitration, and the U.S. Supreme Court in *Gilmer v. Interstate/Johnson Lane Corp.*[9] noted that reduced discovery is to be expected in an arbitration agreement as one of the justifications for the comparatively lower cost of arbitration. It then argues that this court upheld this specific discovery provision in *Newell v. Providence Health & Services*[10] because the parties agreed that discovery would be substantially limited.

---

[7] 192 Wn. App. 584, 610, 368 P.3d 487 (2016).
[8] 315 F. Supp. 2d 94, 103 (D.D.C. 2004), *aff'd,* 413 F.3d 77 (D.C. Cir. 2005).
[9] 500 U.S. 20, 31, 111 S. Ct. 1647, 114 L. Ed .2d 26 (1991).
[10] 9 Wn. App. 2d 1038, 2019 WL 2578679, at 6 (2019). This case is unpublished. Under GR 14.1(c), we may discuss unpublished opinions as necessary for a well-reasoned opinion. It is included here only because it was offered as authority by Swedish.

It also argues that Phillips fails to explain how the DRA provisions related to discovery are insufficient for him be able to effectively prove his claims and the cases he relies on either involved situations entirely dissimilar to his own or actually support Swedish's position. We agree with Swedish.

Division Three of this court noted in *Schuster v. Prestige Senior Management, LLC* that it is well-recognized that discovery generally is more limited in arbitration than in litigation. 193 Wn. App. 616, 644, 376 P.3d 412 (2016). Since case law is clear that a WLAD claim can be subject to arbitration and the parties agreed to arbitrate any controversy or claim, we hold that the limited discovery is simply one aspect of the trade-off between the "procedures and opportunity for review of the courtroom [and] the simplicity, informality, and expedition of arbitration" that is inherent in every agreement to arbitrate. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985). Here, the provision allows the arbitrator to authorize discovery "as is necessary for a fair hearing." Phillips fails to demonstrate how this provision hinders his ability to present his claims. We hold that the discovery limitation provision is not substantively unconscionable.

### 4. Statutory Remedies

Phillips next avers that the arbitration provision is unconscionable because it requires employees to "first try to negotiate a fair and prompt resolution" before pursuing arbitration. He argues that this provision precludes employees from seeking support from federal, state, or local authorities and is therefore substantively unconscionable. Relying on *Burnett*, he contends that it is substantively

- 14 -

unconscionable to "force employees facing discrimination, harassment, or a hostile work environment to first negotiate with their harasser."

Swedish distinguishes *Burnett*, noting that the policy there barred terminated employees from seeking redress, shortened the statute of limitations, and provided no exception for supervisor review. 196 Wn.2d at 58. It avers that Phillips has not identified any comparable provisions in the arbitration provision. We agree with Swedish.

In *Burnett*, Pagliacci Pizza had a mandatory arbitration policy, "F.A.I.R.," that acted as a complete bar to arbitration unless an employee has fully complied with the steps and procedures in the F.A.I.R. policy, which included reporting the matter and all details to one's supervisor. *Id*. at 57-58. This policy effectively barred claims for terminated employees and shortened the statute of limitations, so the court held that this arbitration provision was one-sided and harsh and therefore substantively unconscionable. *Id*. at 57.

Here, while the negotiation process may introduce a minor delay, it is not "shocking to the conscience, monstrously harsh, or exceedingly calloused." *Id*. The provision does not impose an unreasonable burden on Phillips, nor does it function as a bar to arbitration or from seeking support from a federal, state, or local authority. We conclude that the arbitration provision is enforceable and is not substantively unconscionable.

II.      Arbitrability

The issue of who decides arbitrability is a question of contract. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67, 139 S. Ct. 524, 202 L. Ed. 2d

480 (2019). The Supreme Court held that when parties delegate the question of arbitrability to an arbitrator, courts lack the power to decide that issue, even if the arbitration claim seems meritless. *Id*. at 68.

Here, the DRA expressly states that "[w]hether a controversy or claim is covered by this Agreement shall be determined by the arbitrator." This language is broad, mandatory, and unambiguous; it delegates the threshold question of arbitrability to the arbitrator. The arbitrator must decide whether Phillips' WLAD claims fall within the scope of the arbitration agreement. We do not reach the question of arbitrability, and remand for the entry of an order compelling arbitration.

Reversed and remanded for further proceedings.

_____

WE CONCUR:

_____     _____